ALBANY,
Oct. 1833.

Coles
v.
Trustees of
Williams-
burgh.

#### COLES *vs.* TRUSTEES OF THE VILLAGE OF WILLIAMSBURGH.

The trustees of the village of *Williamsburgh*, in the county of Kings, may proceed in the execution of the powers entrusted to them by their act of incorporation, although the *map* of the survey of the village, directed by the act to be made, *does not exhibit the gradations* and regulations required in the streets, roads and alleys to be permanently laid out.

*It seems*, that where, in an act of incorporation of a village, such requirement is made, the act will be considered as complied with, if the duty be performed as far as practicable; i. e. if the inequalities of the surface of the village plot be so great and embarrassing as to render an accurate gradation impracticable, it may be omitted.

The trustees of a village, authorized to *open a street* on the presentment of a petition, may act upon a petition presented to their *predecessors*, and direct the street to be opened; if such petition was duly presented and received, although not legally proceeded upon by the trustees in office at the time of its presentment.

Lands appropriated for the opening of a street, may be entered upon and worked previous to the appraisement of the value of the same, and before payment of the damages to the owner.

It is no objection to an *appraisement* of the value of land required for a street, that in *form* it estimates the value of the land at a *certain sum per foot*, instead of stating its value in a *gross amount.*

A party objecting to proceedings relative to the opening of a street, cannot avail himself of an irregularity which may exist in the proceedings relative to property in which he has no interest.

Where a board of trustees of a village consists of the number of *five*, a resolution passed at a meeting of such board is not obligatory, in which *only two* of the members concur ; the other three members omitting to vote on the ground of *interest*, but entering their assent to the proposed measure.

A vote of *confirmation* of an assessment passed at a meeting of a board of trustees, consisting of the number of *five*, at which only *four members* attended, and in which vote but *two trustees concurred*, the others being interested *declining to vote*, is not a valid act, although the two trustees who did not vote assented to the vote of their colleagues.

THIS is a case of *certiorari*, to review the proceedings of the trustees of the village of *Williamsburgh* in the opening of a street. The village was incorporated by an act of the legislature, passed the 14th April, 1827. *Laws of 1827, p. 270.* By the 19th section, of which it was made the duty of the trustees of the village to cause, as soon as conveniently might be, *a survey of the village* to be made, together with a *map* thereof exhibiting the streets, roads and alleys to be perma-

ALBANY,
Oct. 1833.

Coles
v.
Trustees of
Williams-
burgh.

nently laid out, and also the *gradations* and *regulations* which would be required in such streets, and accompanied by such remarks and explanations as the nature of the subject might require : to be kept by the clerk of the corporation. The trustees caused a survey of the village and map to be made, which map they certify to be in strict conformity to the requirements of the statute, *except that it does not exhibit the gradations* and regulations which will be required in the streets of the village ; it being wholly impracticable to do so, by reason of the peculiar surface of the ground. On the map is laid down a street called *First street*, of the width of 60 feet, extending from *Grand street* southerly to the boundary line of the village, a distance of about 1700 feet. In November, 1827, the first *election* of village officers took place, and at a regular meeting of the board of trustees, all being present, five in number, on the 3d March, 1828, a petition in due form was presented for opening, pitching and regulating *First street*. The trustees resolved to grant the prayer of the petition, *two* of the trustees voting in favor of the resolution ; the *three others* being *interested* in the opening of the street, did not vote, but entered their approbation of the measure on the minutes of the board. Sundry proceedings were then had in reference to the opening of the street, but nothing effectual was done until after the next annual election in November, 1828, at which a new set of trustees were elected. In December, 1828, the new trustees directed that a *jury* should be summoned to ascertain the value of the land taken for opening *First street*, and to estimate the damages of the owners of the land taken for the opening of the street, and in pursuance of such resolution, a warrant was issued by two justices of the county of Kings, directing the sheriff of Kings to summon twelve freeholders to appraise the value of the land and damages, &c. who met with the justices, and on the 28th of January, 1829, made and signed an inquisition, by which they appraised the value of the land to be taken for the purpose of opening the street as follows : for the first 100 feet, from Grand street, $10 per foot, running measure ; and for the land from the termination of the 100 feet to a certain point further south, $7 per foot, &c. ; and appraised the damages of the owners of land. This inquisition

was returned, and on the 3d *February*, 1829, at a meeting of the board of trustees approved, the trustees causing it to be put upon their files. On the 13th April following, the trustees resolved that conformably to the resolution of the board of trustees of the 3d of March, 1828, and the petition of a majority of the persons interested in the opening of First street, the clerk of the village should give notice that all buildings, fences and other obstructions were required to be moved, and the street opened in twenty days after the first day of May then next, preparatory to regulating the same. Some further ineffectual proceedings were then had previous to the 11th November, 1829, when trustees were elected for the then ensuing year. On the 17th *December*, 1829, the trustees being advised that due notice of the proceedings had not been given to *Coles*, the *plaintiff in error*, and to *two other persons*, directed such notice to be given. Notice was accordingly given, and the parties failing to appear, the trustees, on the 19th *December*, resolved that the necessary steps should be taken to summon a jury, who assembled on the 24th December, and an inquisition was found, by which the land owned by *Coles* to be taken for the purpose of opening the street, was *appraised at fifteen cents the square foot*. On the 7th January, 1830, the trustees considering previous assessments which had been made under the direction of the trustees defective, issued a new warrant directing $12,500 to be assessed. On the 24th *March*, the assessments were presented for confirmation at a meeting of the board of trustees; there were but *four* trustees present at the meeting, only *two* of whom voted to *confirm* the assessment; the *other two* did not vote, *being interested*, but they caused their approbation of the vote of confirmation to be entered on the minutes of the board; and on the 17th *April* a warrant issued to collect the assessments, which was signed by four of the trustees, two of whom were interested in the opening of the street. On the 7th *June*, 1830, a *certiorari* was allowed by a commissioner. The trustees, in their return to the certiorari made on the 25th April, 1831, state that on the *5th June*, 1829, the trustees of the village for the time being entered into a contract with an individual to graduate, regulate, form and finish *First street* from Grand

ALBANY,
Oct. 1833.

Coles
v.
Trustees of
Williams-
burgh.

ALBANY,
Oct. 1833.

Coles
v.
Trustees of
Williams-
burgh.

street to the Brooklyn line, for which they agreed to pay the sum of $1500 ; and that at the time of the making of the return, the *whole of the street was completed* agreeable to the profile thereof and the plan of the village.

*J. Dikeman & H. W. Warner,* for plaintiff in error.

*J. L. Graham & S. A. Foot,* for trustees.

*By the Court,* NELSON, J. The principal ground relied on for a reversal of the proceedings is, that the trustees of the village of Williamsburgh were not authorized, under the circumstances of this case, to grant the prayer of the petition presented for opening, pitching and regulating *First street* in that village, nor to open, pitch and regulate the same.

By the 19th section of the act incorporating the village, it was provided that the trustees, and all acting under them, should be empowered to enter in the day time into and upon any lands and tenements which they should deem necessary to be surveyed, used or occupied, or converted into a street or highway ; and it is made their duty to cause, *as soon as conveniently may be,* a survey of said village to be made, together with a map exhibiting the streets, roads and alleys to be permanently laid out, and also exhibiting on said map all the gradations and regulations which will be required in said roads, alleys and streets, accompanied with such remarks as the subject may require, to be signed by the president of the board, and kept by the clerk for inspection, so that no one may plead ignorance of the plan to be adopted for opening, laying out, levelling and regulating the streets of the village. The 21st section gives to the trustees power to order and direct the pitching, regulating and paving the streets according to such survey and map. By the 24th section, the trustees, on application as therein specified, are empowered to widen and alter all public roads and streets, already laid out in said village, to such convenient breadth, not exceeding 60 feet, as they shall judge fit, and also lay out and make such other roads and streets, conformable to the map of the village, as they shall think necessary. On the 3d November, 1827, a map was adopted by the trustees and signed by the president under the above 19th

ALBANY,
Oct. 1833.

Coles
v.
Trustees of
Williams-
burgh.

section, and which conformed to the directions of the act, except that it did not exhibit the gradations and regulations required ; and as stated by the surveyor, it was wholly impracticable to make them judiciously, from the peculiar irregularity in the surface of the village plot. It is supposed by the counsel for the plaintiff that this omission in the map affects the power of the trustees under the act of incorporation, in opening and laying out streets and roads in the village. This, I think, is a mistake. The act is only directory, and the survey and map are not, by the terms of it, nor by fair construction, made a preliminary step to the exercise of the powers of the trustees under the 21st, 22d and 24th sections of the act. It was the duty of the trustees to cause such survey and map to be made for the convenience and benefit of all concerned in the intended improvements, and was no doubt a wise provision of the law, and the trustees were bound to make it ; but the obligation of that duty extended no farther than the discharge of it was practicable. If the inequalities of the surface of the village plot were so great and embarrassing as to render an accurate and judicious gradation on the general map of the village, with its numerous streets, roads and alleys, really impracticable, it was proper to omit it. Gradations, no doubt, could have been laid down by the surveyor whether accurate or not, and then the objection would not have existed ; but I cannot think the statute required this to be done. Before any street could be opened, it would be necessary to ascertain its gradation and regulation ; and this is a substantial compliance with the scope and sense of the statute. It would then be opened in conformity to the directions of the statute. It is perhaps worthy of remark, that the act requires this duty of the trustees to be performed only " *as soon as it conveniently may be,*" which, without any straightened construction, may have had regard to the feasibility of the service, or any part of it, but certainly does not look like a condition precedent to the exercise of any powers relating to the opening of streets. We may also add, that by the 24th section, the trustees are authorized to widen and alter any public road or street or highway to a convenient breadth, not exceeding 60 feet, without reference to the map ; and the opening of First street was no

ALBANY,
Oct. 1833.

Coles
v.
Trustees of
Williams-
burgh.

more than this, after it struck the land of the plaintiff on to its termination.

The petition for opening First street was presented at a meeting of the trustees on the 3d March, 1828. All the trustees were present : two only voted ; the other three declining on the ground of interest. Was the vote a legal one in favor of the petition ? I think not. The act provides, *section 22,* (and without it the law would have been the same,) that if either of the trustees shall be interested as owner or occupant of property in any street to be pitched, paved or regulated, the trustees so interested shall not vote on the question. The act requires three out of the five, or a majority, to make a quorum. If there were but three present, then the votes of two, being a majority, would be valid. Here were five trustees, three of whom were incompetent to vote by the act ; and being so, it seems to me, so far as the vote was concerned, they were not trustees for any purpose. Being incompetent to perform the principal act, I think it necessarily follows that they cannot legally appear in any of the subordinate and collateral matters thereto. Besides, if they could, five were present, and how could the votes of two control any measure ? That number is competent to decide by vote only when *three* constitute the quorum. I am of opinion, however, that striking out the vote of the meeting of the trustees of the 3d March, 1828, the regularity of the proceedings in the opening of the street may be sustained. In *November*, 1828, a new set of trustees were elected, who, in *December* of the same year, acted upon the petition presented to their predecessors, by causing the value of the land required for the opening of the street, and the damages sustained thereby, to be appraised by two justices and twelve freeholders ; and on the 13th *April*, 1829, at a meeting of the board, resolved that the clerk of the village should give notice, that *conformably to the resolution of the board of trustees of the 3d March,* 1828, and the petition of a majority of the persons interested in the opening of *First street*, all buildings, fences and other obstructions were required to be moved, *and the street opened* in twenty days after the first day of May then next, preparatory to regulating the same. Again, in December, 1829, after another

election of trustees, a new appraisement was directed to be made, particularly in reference to the lands of the *plaintiff in error* and two other individuals, in respect to whom it was supposed the proceedings had not been regularly conducted, and such appraisement was in fact made. From these facts, it is manifest that the proceedings of the trustees at their meeting on the 3d March, 1828, relative to the opening of *First street*, were adopted and confirmed by the trustees subsequently elected. The trustees, in March, 1828, had received the petition for the opening of the street, and had resolved that the street should be opened, but nothing effectual was done under such resolution until after a new election in November, 1828, when the trustees then in office proceeded to carry the resolution of March, 1828, into effect. The petition presented to their predecessors and on file, was sufficient authority to them to direct the street to be opened.

The plaintiff in error cannot avail himself of any irregularity which may have happened in the appraisement of the value of the lands of others, in which he had no interest, in the inquisition of 28th January, 1829, inasmuch as the assessment of the lands of each owner is separate and distinct, the one in no way dependant upon the other. It is not for him to urge such an objection.

The form of the appraisement is also objected to. It is said to be irregular that the value of the land taken for the street should be estimated at *a certain sum per foot*, instead of finding *a sum in gross;* that it is uncertain, and therefore erroneous. I think it sufficiently certain. The verdicts or estimates in these street or road cases are not scanned with the same technical strictness which is applied to the verdict of a common law jury. The trustees in this case could readily, by calculation, ascertain the sum in gross.

In relation to the objections urged against the legality and regularity of the assessments made by the assessors, as founded either upon the want of authority of the trustees to issue the warrants, or of the assessors to perform the duties required of them, it is unnecessary to review the various proceedings in respect to these warrants previous to the issuing

ALBANY,
Oct. 1833.

Coles
v.
Trustees of
Williams-
burgh.

of the warrant of the 7th January, 1830. The warrant of that date was correctly issued by trustees having competent authority to issue it, and was executed by assessors authorized to act under it. But an insurmountable difficulty is presented in the confirmation of the assessment; it was confirmed at a meeting of the board of trustees, when only *four trustees* were present, and but *two* of them were competent to act, and those two alone voted on the question of confirmation; the *two others* being *interested*, declined to vote, and did not in fact vote, although they assented to the vote of their colleagues. This clearly was irregular. Two of the number present being interested, were incompetent to act upon this question; and there being but two more of the trustees present, there was not a quorum competent to the transaction of the business on this subject, and consequently the confirmation of the assessment, and the issuing of the warrant thereon for the collection of the monies assessed, are illegal and void, and must be set aside.

It was also urged on the argument that the trustees had no power to open and regulate or widen a street or road until after appraisal of damages and payment of the same to the owner of the lands taken for the street or road. Although this question is not free from difficulty, I am of opinion that all this is not necessary to the exercise of the above power. The only limitation or condition precedent is the petition of " a majority of the persons owning the property described in any such application, and who are intended to be benefitted thereby, or whose property shall be assessed for the payment of the expense attending the same." Upon such application the trustees are authorized and empowered to alter and widen, or lay out, as the case may require, any public road or street, *p.* 270, § 24. The doubt as to the soundness of this position arises from the language of the concluding part of this section, from which an inference might be drawn that the legislature did not intend that the land should be actually appropriated until paid for. But when we take into view the fact that the funds out of which this payment is to be made are to be assessed upon and collected from the persons benefitted by the improvement, such an inference should not be drawn. unless impera-

tively required by the statute.   If it is said that the property of the citizen should not be taken for public purposes without a just compensation, the argument is just as strong one way as the other.   The rights of those upon whom benefit is assessed is as great and pressing as of those whose lands are taken ; and the injustice would be the same, if the term may be used, to collect this benefit before actually received, as to take the lands before payment.

It is said some of the trustees who directed the issuing of the warrant by the justices to the sheriff to summon the juries were interested.   No such fact is stated in the return ; on the contrary, it is expressly contradicted by the return, and we cannot look beyond it, nor take the fact upon argument or inference.

Upon the whole, we are of opinion that the proceedings of the trustees may be sustained in the opening and regulating of the street, and in the assessment of the damages by the *jury;* but that the confirmation of the assessment by the assessors cannot be supported, and that the issuing of the warrant for collection was illegal.   The proceedings of the trustees, therefore, are confirmed, except so much thereof as relates to the confirmation of the assessment and the issuing of the warrant thereon ; which are reversed, without costs to either party.