## KING'S LAKE DRAINAGE AND LEVEE DISTRICT, Appellant, v. JAMISON.

### Division One, July 2, 1903.

1. **Statutory Construction:** QUALIFYING PHRASES. Limiting or qualifying words or phrases found at the end of a section of a statute may apply to the whole section.

2. ———: DRAINAGE DISTRICT: APPEAL. The statute concerning the establishment of drainage districts by the county court says that "the order of confirmation shall be final and conclusive, and the proposed work be established and authorized and the proposed assessments approved, subject to the right of appeal to the Supreme Court, as in other actions." *Held, first,* that the qualifying words, "subject to the right of appeal," do not limit the landowner's right to appeal to questions concerning benefits, but apply to all matters involved in the order; *second,* the appeal is not directly to the Supreme Court from the county court, but to the circuit court, as in other suits, and from that court to the Supreme Court; *third,*

it must be presumed that the Legislature, in providing for an "appeal to the Supreme Court," had in mind the general statute (secs. 3318 and 3434, R. S. 1889) providing for appeals from the county to the circuit court in all cases not expressly prohibited; *fourth*, this view is made clear by the last words of the sentence, "As in other cases."

3. **Judicial Officer:** INCOMPETENCY. One who has a financial interest in an action is not competent to sit as a judge therein.

4. **Drainage District:** COMPETENT COMMISSIONERS. The statute requiring the commissioners to be appointed by the court to establish a drainage district, to be "competent," means that they shall not be pecuniarily interested in the result, as well as possess the necessary skill and intelligence.

5. ———: ———: COMMISSIONER WHOSE WIFE OWNS LAND. A commissioner whose wife owns land which should be included within the drainage district, is not competent under the law to act as a commissioner in establishing a drainage district. He has a marital interest in the land during her life and, there being a child born of the marriage, if he should outlive her, he may have a curtesy interest. He, therefore, has a pecuniary interest in the result. In this case the wife had 270 acres of overflow land which was by the petition embraced within the drainage district, but by the report of the commissioners, of whom her husband was one, that land was excluded. The evidence showed that this land would be benefited by the establishment of the levees and drains, but by being excluded from the report and order confirming the cause, it would escape the burden of the original cost and the subsequent cost of repairs. *Held*, that he not only had an interest, but profited by the report to which he was a party, and the order of the court establishing the district and assessing benefits and damages was invalid. Nor is it any the less invalid because the exceptor did not object when he was appointed but waited till the coming in of the report.

Appeal from St. Louis City Circuit Court.—*Hon. Jas. E. Withrow*, Judge.

AFFIRMED AND REMANDED TO COUNTY COURT.

*John H. Overall* for appellant.

(1) (a) No appeal lies from order of county court establishing district and approving report of commissioners, and, therefore the court had no jurisdiction to hear this appeal. (b) Appeal is allowed only where the circuit court can give such judgment as the county court should have given, and nowhere is the circuit

court in this State given authority to establish drainage districts. Bean v. Barton County Court, 33 Mo. App. 644; Aldridge v. Spears, 40 Mo. App. 530; Foster v. Dunklin County, 44 Mo. 216; In re Saline County, 45 Mo. 52; Railroad v. St. Louis, 92 Mo. 160; State ex rel. v. Clark County Court, 41 Mo. 44; Sheridan v. Heming, 93 Mo. 321; Scott Co. v. Leftwitch, 145 Mo. 33.    (2) Seaman, appointed by the county court of Lincoln county as one of the commissioners in said matter, was a competent person to act as such commissioner, although his wife had an interest in lands within the district, as contemplated in the original petition for the organization of the district. In re Southern Boulevard, 3 Abb. Prac. (N. S.) 447; Laws 1893, p. 189, sec. 5; Wilbraham v. Commissioners, 11 Pick. 322; Philip v. County Commissioners, 122 Mass. 258.    (3)  The said Seaman, appointed by the county court of Lincoln county one of the commissioners in said matter, was not, at the date the boundaries of said district were altered by said court, interested in lands within the limits of said proposed district, nor was he, at the date of the filing of exceptions by appellant, interested in lands within the limits of said proposed district.    (4)  No objection was made and no question raised as to qualification of the other two commissioners appointed with said Seaman, and said other two commissioners constituted a quorum, as provided by section 8 of the drainage law, and said other two commissioners concurred in all matters within the duties of said commissioners, and by said section 8 the said concurrence of said other two commissioners, a majority of the number of commissioners appointed, was sufficient to the determination of all said matters within the duties of said commissioners.    Crowell v. Londonderry, 63 N. H. 42; In re Southern Boulevard, supra.    (5)  As it is not charged by the exceptor that commissioner Seaman was influenced by any interest his wife may have had in lands within the district originally contemplated, or

that exceptor has suffered prejudice or wrong by reason thereof, the court should not refuse to confirm the report of commissioners in the absence of affirmative evidence that exceptor did not know of such condition when appointment was made, and that he has suffered damage thereby. Doddrige's Suprs. v. Stout, 9 W. Va. 703; Bradley v. Frankfort, 99 Ind. 417. (6)    The at-. tempted appeal of respondent is not based on exceptions to report of the commissioners assessing benefits and damages and, therefore, even if the court should conclude that the term "competent," as used in the act means "disinterested," still respondent ought not to be permitted to wait until work is all done and report of commissioners filed before making his objections to the qualifications of commissioner Seaman. Bradley v. Frankfort, 99 Ind. 417.

*Charles Martin* and *F. N. Judson* for respondent.

. (1) (a) The case was appealable, being an exercise of a judicial and not a mere administrative power. An appeal was therefore properly taken to the circuit court and from that court to the Supreme Court. Savannah v. Hancock, 91 Mo. 54; In re Big Hollow Road, 40 Mo. App. 363, 111 Mo. 326; Regina v. Aberdare Canal Co., 14 Ad. and L. N. R. (Q. B.) 854; R. S. 1889, secs. 3318 and 3434; Cox v. Drake, 34 Mo. App. 82; In re Webster, 36 Mo. App. 355.    (b) Under section 14 of the Act of 1893, remonstrances may be filed and appeal taken on all questions raised by the remonstrances affecting the validity of the assessment for damages. Anderson v. Pemberton, 89 Mo. 64; Whitely v. Platte County, 73 Mo. 30; Colville v. Judy, 73 Mo. 651; In re Petition of Gardner, 41 Mo. App. 589; Spurgeon v. Bartlett, 56 Mo. App. 349. The language of the act admits of no other construction.    (c)    Appeal to the Supreme Court must of course mean that the right of appeal is to be exercised in the only way in which the Su-

preme Court can correct errors of that tribunal, that is, in the exercise of its appellate jurisdiction over the circuit court. ` (2) The ruling of the circuit court that Seaman was an incompetent commissioner was clearly correct. He was personally interested in regard to the interests of his wife as he had an inchoate estate of curtesy. He was really judge in his own cause. Taylor v. County Commissioners, 105 Mass. 225; Oakley v. Aspenwall, 3 N. Y. 546; State ex rel. v. Wofford, 111 Mo. 529; Broome's Legal Maxims (6 Am. Ed.), p. 118. The proceedings in such a cause are essentially judicial, and judicial hearing is essential to constitute due process of law. Norwood v. Baker, 172 U. S. 269. The cases cited by appellants as to the qualifications of commissioners in opening highways are not in point. The duties in the case at bar were not administrative, but judicial, involving the taking of citizens' property.

MARSHALL, J.—This is a proceeding to establish a drainage and levee district, under the provisions of the Act of 1893 (Laws 1893, p. 188), being now article 5, of chapter 122 (R. S.) 1899, sections 8318, et seq. The proceeding was commenced in the county court of Lincoln county. The land proposed to be included in the drainage district lies partly in Lincoln county and partly in Pike county, the larger part being in Lincoln county. A petition purporting to be signed by the "adult owners of more than one-half of the lands thereinafter described" was presented to the county court, accompanied by an affidavit of three of the signers to the effect that they had examined the petition and were acquainted with the locality of said district, "and that said petition is signed by the adult owners of more than one-half of the lands embraced in said district." The defendant was one of the petitioners, but afterwards by a letter addressed to the attorney for the remonstrants, attempted to withdraw his name from the petition.

Vol 176 mo—36

Remonstrances were filed by certain owners of land in the district. Notice was given by setting up handbills in five public places in the district, by delivering a copy to the owner of each tract of land, or by leaving a copy at the last usual place of abode of such owners, and by publication for three weeks in certain newspapers in. Lincoln and Pike counties. The petition and remonstrance was heard by the county court at its May term, 1894, to-wit, on July 9, 1894, and taken under advisement, till the regular August term, 1894, when the county court granted the prayer of the petition, and appointed W. J. Seaman, W. H. Baskett and Frank L. Wilson, commissioners to lay out and construct the work, and required them to give a bond for $80,000.

During the same term the commissioners made their report, by which they changed the boundaries of the district as proposed in the petition and assessed the total damages at $2,731.67, and the total benefits at $36,-253.79, and, *inter alia*, omitted from the district certain land belonging to Fannie Seaman, the wife of commissioner W. J. Seaman. The defendant Jamison was allowed $205.56 damages, and charged with $5,726 benefits to his 1,577 acres of land lying in the district. He filed nine exceptions to the report of the commissioners, the fifth of which was as follows: ''Fifth, because one of the commissioners appointed by the court, namely, W. J. Seaman, was not a competent person to act, in that he was then and now is interested in lands within the limits of said proposed district.''

At the May term, 1895, the county court overruled the exceptions and entered judgment approving the report of the commissioners, establishing the drainage district, under the name of King's Lake Drainage and Levee District, and declaring it to be a body corporate. The defendant, Jamison, filed an affidavit for an appeal, and gave bond in the sum of $100, and was allowed an appeal to the circuit court of Lincoln county. In December, 1895, the circuit court of Lincoln county or-

dered the venue changed to the circuit court of St. Louis, for the reason that the judge of the circuit court of Lincoln county had become interested in land in the district.

On the 7th of January, 1897, the plaintiff moved the circuit court to dismiss the appeal, assigning as grounds: "First. The county court of Lincoln county, Missouri, having found in favor of the validity herein, and having entered an order confirming the report of the commissioners herein, the same is final and conclusive. Second. This appeal is not from proposed assessments of benefits or damages, from which alone appeal lies. Third. An appeal lies only to the Supreme Court." The circuit court overruled the motion to dismiss on the 22d of December, 1897. The case came on for trial on June 12, 1899, and the exceptor, to sustain the issues on his part, introduced the transcript of the cause from the Lincoln Circuit Court, which embraced the record of the proceedings before the county court of Lincoln county, and testimony as to the Ashbaugh land which will be referred to later. The plaintiff then introduced parol testimony which showed that the commissioner, W. J. Seaman, owned no property within either the proposed or established drainage district, but that his wife owned 270 acres of land in the proposed drainage district, a part of which was subject to overflow, and that the commissioners excluded said land from the district in their report, and that there was one child born of the marriage of commissioner Seaman and his wife, which is still living.

The circuit court sustained the fifth exception above quoted, and set aside the report of the commissioners on that ground, and overruled all the other exceptions. From this judgment the plaintiff appealed to this court.

I.

The first error assigned, is the overruling of the motion to dismiss the defendant's appeal from the county court to the circuit court.

This contention involves a construction of section 14 of the Act of 1893 (being section 8331, R. S. 1899). That section authorizes any owner of land in the district to except to the report of the commissioners; provides for a trial by jury, if demanded, upon the question of the assessment of damages and benefits; requires all other issues to be tried by the court; authorizes the court to order a modification of the report of the commissioners, and then adds: "If the finding of the court be in favor of the validity of the proceedings, the court, after the report shall have been modified to conform to the findings, or, if there be no remonstrance, the court shall confirm the same, and the order of confirmation shall be final and conclusive, and the proposed work be established and authorized and the proposed assessments approved, subject to the right of appeal to the Supreme Court, as in other actions."

Upon this the plaintiff claims that the judgment of the county court is final and conclusive as to all matters except as to the assessment of damages and benefits, and that as to them only an appeal lies, but lies directly from the county court to the Supreme Court.

In support of this contention counsel cite cases of which State ex rel. v. Clark County, 41 Mo. 44; Foster v. Dunklin, 44 Mo. 216; Sheridan v. Fleming, 93 Mo. 321, and Scott Co. v. Leftwich, 145 Mo. 26, are types. An examination of those cases, however, will show that they only go to the extent of holding that where the county court acts as agent of the county, and the particular judgment does not affect the rights of any particular citizen, but affects the common rights of all citizens of the county, no appeal by a citizen will lie.

Whenever, however, the judgment imposes any special burden upon any citizen, he has a right to appeal. [In re Big Hollow Road, 111 Mo. 326.] And generally a right of appeal exists under the general law, whether given or not by the special act or charter under which the proceeding is had, whenever a burden

is imposed upon the property of a citizen. [Railroad v. Lackland, 25 Mo. 515; Bridge Co. v. Schaubacker, 49 Mo. 555; Ring v. Bridge Co., 57 Mo. 496; Railroad v. Campbell, 62 Mo. 585; Railroad v. Evans, &c., Brick Co., 85 Mo. 323.] For this reason appeals have been allowed from judgments of the circuit court in condemnation proceedings under the charter of St. Louis, notwithstanding there is no provision of the charter regulating such proceedings which provides for an appeal. [St. Louis v. Thomas, 100 Mo. 223.]

It is claimed, however, that by virtue of the language employed in section 14 of the Act of 1893, an appeal is allowed only as to the assessment of damages and benefits, and that as to all other matters the judgment of the county court is expressly made final and conclusive and that in this case no appeal was taken from the assessment of damages or benefits, and hence the appeal should be dismissed.

The language of the section in question is that "the order of confirmation shall be final and conclusive, and the proposed work be established and authorized and the proposed assessments approved, subject to the right of appeal to the Supreme Court, as in other actions."

The contention is that the words "subject to the right of appeal to the Supreme Court, as in other actions," apply grammatically and legally, only to their immediate antecedent, which is said to be, "and the proposed assessments approved."

The proper construction to place upon limiting or qualifying words or phrases found at the end of a section has lately undergone adjudication by this court in the case of State ex rel. Atty.-Gen. v. St. Louis, 174 Mo. 125; and it was there held that such words or phrases, no matter where they appear in a section, may apply to the whole section. And this is manifestly the intention of the lawmakers in this case, for there could be no good reason given for holding that the judgment of the county court as to assessments for damages or benefits, which is

purely a matter of fact and not of law, should be subject to the right of appeal, but that as to all other matters, which would be matters of law, no such right of appeal should exist.   Such a construction would reverse all appellate practice, for it would make findings of fact, depending upon conflicting testimony, reviewable by the Supreme Court, and deny the power of that court to review the judgment of the county courts as to all matters of law.   Moreover, cases appealed from a county court to a circuit court are tried *de novo* in the circuit court (sec. 3434, R. S. 1889) and there is nothing in the nature or character of cases like this which would indicate that such case should be treated differently from other cases.

It follows, therefore, that the right of appeal applies to the whole case and is not limited as claimed.

Under section 3318, Revised Statutes 1889, appeals lay from the county court to the circuit in all cases not expressly prohibited, and under section 3434 such appeals are required to be tried in the circuit court as though the case had originated in that court without regarding any error, defect or informality in the proceeding in the county court.

When the Legislature passed the Act of 1893 and made the provision quoted in section 14, providing for an appeal to the Supreme Court, it must be presumed to have had in mind the provisions of sections 3318 and 3434 of the Revised Statutes of 1889 aforesaid, and to have intended that the appeal from the county court should be taken to the circuit court, and from that court to the Supreme Court, and not directly to the Supreme court as the plaintiff contends.   This is made clear by the last words of the sentence, to-wit, "as in other actions."

In other actions the appeal from the county court to this court comes only through the circuit court, as provided by the sections of the statute referred to.

The motion to dismiss the appeal was therefore properly overruled by the circuit court.

## II.

When the cause came on for trial in the circuit court, the defendant (the exceptor), to sustain the issues on his part, offered the transcript of the cause that had been sent up from the county court, which embraces the record of proceedings before the county court, and then showed that Andrew Ashbaugh died in 1871, leaving a wife and nine children, and that by the terms of his will his land (which is excluded from this drainage district) was devised to his wife for life, with a remainder in fee to his children, and then showed that the children were not made parties defendant herein, nor served with notice, although it appeared that they employed counsel and he was defending on their account as well as on account of their mother. The plaintiff then showed that the commissioner, Seaman, had no interest in the twenty-six acres lying in the west half of the northeast quarter of section 36, township 51, range 2 east, which appeared from the petition and assessment to belong to him, but that it belonged to R. H. Norton. From the cross-examination by the defendant of the commissioner Seaman, however, it did appear that his wife owns two hundred and seventy acres "in the bottom," a part of which was subject to overflow, and that such land was embraced in the drainage district described in the petition, but that it was excluded from the drainage district by the commissioners (of whom her husband was one); and further, that there was a living child born of their marriage.

Upon this showing the circuit court sustained the fifth exception, which was that Seaman was not a competent person to act, in that he was then and is now interested in lands within the limits of the proposed district, and set aside the report, but overruled all of the

other exceptions. From this order the plaintiff appealed. The defendant did not appeal.

The two hundred and seventy acres belonging to the wife of the commissioner, Seaman, was subject, or partly subject, to overflow, and was embraced in the drainage district described in the petition and would be reclaimed, protected and rendered valuable by the drains and levee. It was, therefore, very properly included in the proposed district. Her husband was appointed one of the commissioners, with the result that her land was excluded from the drainage district, with the result, according to the uncontradicted testimony as disclosed by this record, that her land would be benefited, reclaimed, protected and rendered valuable, and she would not be charged with any part of the original cost of the work nor with any part of the recurring annual expense of keeping the work in repair. The result of all of which is that by as much as her land was benefited and she was exempted from paying therefor, the burden thus taken off of her land was necessarily added to the burden placed upon the lands of the other owners of land in the district, of whom the defendant is one. This was clearly unjust and wrong. The commissioner, Seaman, had a marital right to the land during the life of his wife, and if he survived her he would have an estate by the curtesy in the land. He was, therefore, directly and personally interested in the case, both as to benefits received and to be received, and as to burdens taken off of the land. He therefore sat as a commissioner in a case wherein he was personally interested, and by the report of the commissioners was enabled to derive the benefits of the proposed drains and levee but was relieved from the burden of paying anything therefor. It was for this reason that the circuit court sustained the fifth exception and set aside the report and the judgment.

It is contended by the plaintiff that this was error, because by section 5 of the Act of 1893, it is provided

that the court "shall appoint three *competent* persons as commissioners," and that the statute does not disqualify a commissioner because he is interested in the matter, and that any person is a *competent* commissioner who possesses skill and intelligence enough to do the work required of a commissioner, which qualification commissioner Seaman filled.

It is further contended that whenever the Legislature intended a commissioner to be disqualified by reason of interest in the subject-matter, it has expressly so provided. In support whereof reference is made to the following provisions of the statutes; first, that section 1266, Revised Statutes 1899, provides that in condemnation cases the court "shall appoint three disinterested commissioners, who shall be freeholders," etc.; second, that section 9641, Revised Statutes 1899, concerning roads and highways, provides that the court shall appoint "three disinterested freeholders of the county, who are not interested in or of kin to any of the parties," etc.; third, that section 72, Revised Statutes 1899, concerning administration, requires the court to appoint two respectable householders of the vicinity, "who are disinterested and of no kin to the administrator or executor," and that section 162, concerning the sale of real estate by the executor, requires that he "shall have it appraised by three disinterested householders;" fourth, that section 326, concerning voluntary assignments, requires the court to appoint "two or more disinterested and competent persons to appraise the property;" fifth, that section 2960, concerning dower, requires the court to appoint "three competent persons, as commissioners, to assign and admeasure such dower;" sixth, that section 3163, concerning executions, requires the officer to summon from the neighborhood "three disinterested householders;" seventh, that section 4390, concerning partition, requires the court to appoint "not less than three nor more than five competent persons as commissioners, residents of the county," etc.

It is further contended that as two of the three commissioners appointed were unquestionably competent and disinterested, and as they constituted a majority, the fact, if it be a fact, that commissioner Seaman was incompetent does not affect the case, nor justify the action of the circuit court in setting aside the report.

It is further contended that the defendant knew whether or not Seaman was competent, at the time the commissioners were appointed, and that he did not object at that time to his appointment and, therefore, he waived the question of his competency.

In support of these contentions the plaintiff cites, Wilbraham v. Comm'rs., 11 Pick. 322; Phillips v. Comm'rs., 122 Mass. 258; In re Southern Boulevard, 3 Abb. Pr. (N. S.) 447; and Doddridge v. Stout, 9 W. Va. 703.

Webster's International Dictionary defines the word "competent" to mean: "1.    Answering to all requirements; adequate; sufficient; suitable; capable; legally qualified; fit."

The common law excluded as incompetent witnesses, first, parties; second, persons deficient in understanding; third, persons insensible to the obligations of an oath; and, fourth, persons whose pecuniary interest is directly involved in the matter in issue.    All such persons were held not to be "competent" witnesses.    [1 Greenleaf on Ev. (16 Ed.), sec. 327.]

In Freleigh v. State, 8 Mo. 606, it was held that all persons who are disinterested and not infamous have always been competent witnesses in this State, and are presumed to be competent until the contrary appears. Competency and credibility are held to be entirely distinct.    [Rose v. Bates, 12 Mo. 30; Deer v. State, 14 Mo. 348.]    Incompetency because of being interested and because of being a party has been removed by our statute, but the statute makes the following persons incompetent to testify: first, insane persons; second, a child under ten years of age, who appears incapable of re-

ceiving just impressions of the facts respecting which they are examined or of relating them truly; third, an attorney, concerning communications made to him by his client in that relation, or his advice thereon, without the consent of such client; fourth, a minister or priest concerning a confession made to him in his professional character, etc.; fifth, a physician or surgeon, concerning any information which may have been acquired from any patient while attending him in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or do any act for him as a surgeon." [R. S. 1899, sec. 4659.]

The term "competent" as applied to witnesses has always embraced something more than mere unfitness, or, as the plaintiff puts it, lack of sufficient skill or intelligence.

As to judges, the Am. and Eng. Ency. Law (2 Ed.), vol. 8, p. 26, says: "The judge must have no interest in the result of the trial; otherwise he is incompetent to sit in the cause." And among the many cases cited in the note in support of the text, is Bowman's case, 67 Mo. 146, wherein the competency of the judge was challenged because he was an honorary member of the St. Louis Bar Association, whose committee was prosecuting Bowman for disbarment. It was held in that case that the judge was not disqualified or incompetent, and the decision was based entirely upon the ground that he was only an honorary member, paid no dues, was not entitled to a vote, and "he had not a particle of pecuniary interest involved."

In 17 Am. and Eng. Ency. Law (2 Ed.), p. 732, it is said: "The principle that a man may not be a judge in his own cause is of universal acceptance and has been established since the earliest periods of the common law." The English and American cases cited in the note to the text are too numerous to be even mentioned here. The same book (p. 733), adds: "The maxim just set out, that no man may be a judge in his own cause,

was always applied at common law where the judge had an interest in the cause." And English cases, and cases in Florida, Maine, Texas, and Wisconsin, are cited in support of the text. The same book and page says that at common law neither relationship of the judge to a party, nor the fact that the judge had been of counsel for one of the parties, disqualified him as judge.

Yet in State ex rel. Sansone v. Wofford, 111 Mo. l. c. 529, the court, speaking through MACFARLANE, J., said: "It is a maxim of common law, the wisdom and propriety of which will not be questioned, that 'no man should be a judge in his own cause.' Provision has always been made, in case of the disqualification of a judge to sit, in any case, by reason of his interest therein, to supply a substitute to hear and determine the cause. This interest which disqualifies a judge is always made to include that which an attorney had in a case in which he has professionally acted. Our statute, following this rule, declares that no judge 'who shall have been counsel in any suit or proceeding pending before him, shall, without the express consent of the parties thereto, sit on the trial or determination thereof.'"

In civil cases, the statute (R. S. 1899, sec. 818) permits a change of venue on the ground "that the judge is interested or prejudiced, or is related to either party, or has been of counsel in the cause."

And in criminal cases section 2594 provides that, "The judge of said court shall be deemed incompetent to hear and try said cause in either of the following cases: first, when the judge of the court in which said case is pending is near of kin to the defendant by blood or marriage; or, second, when the offense charged is alleged to have been committed against the person or property of such judge, or some person near of kin to him by blood or marriage; or, third, when the judge is in anywise interested or prejudiced, or shall have been counsel in the cause," etc.

Thus it appears that the whole spirit and genius of

the common law and of our law is that no judge is competent to sit in a case who has a personal, pecuniary interest in the case, and this is true as a general proposition of law, even where there is no statutory regulation on the subject. And wherever a witness or a judge has a personal pecuniary interest in a cause, he is designated as not "competent."

The term "competent" as used in the fifth section of the Act of 1893, therefore, is of much broader signification than the plaintiff construes it, and means a commissioner who is not only possessed of sufficient skill and intelligence to properly discharge the duties to be performed by a commissioner under the statute, but who is also disinterested and not near of kin to any party to the cause.

The commissioner, Seaman, was therefore not a competent commissioner because he had a personal pecuniary interest in the cause. He had a marital right to the possession of his wife's land (so far as the record shows) and an inchoate estate by the curtesy. If the land was included in the drainage district, as upon his own testimony it should have been, because it was at least in part subject to overflow and would be benefited by the drains and levee, it should be assessed with its proportionate part of the benefits conferred and have to bear its part of the original cost of construction and also of the recurring annual expense of repairs. By omitting the land from the district, the land got the benefits and was exempted from the burdens, and those burdens were improperly imposed upon other landowners. The commissioner, therefore, derived a personal pecuniary benefit by having the boundaries of the district changed by the commissioners so as to exclude his wife's land. He, therefore, not only sat in judgment in a cause where he had a pecuniary interest, but he profited by the judgment that was rendered, and others suffered correspondingly thereby.

In this respect this case is unlike the case of Wil-

braham v. Comm'rs., 11 Pick. 322, relied on by plaintiff, for there the commissioner had no personal pecuniary interest, and was interested in the establishment of the road only in the same degree as any taxpayer of the county.

The case of Phillips v. Comm'rs., 122 Mass. 258, also relied on by plaintiff, arose under an act relating to the drainage of the towns of Malden and Melrose, and the question was whether a member of the board of county commissioners and a resident of Malden, was disqualified by reason of a statute which provided that "if either of the county commissioners is interested in a question before the board, or if any part of a road upon which they are to act lies within the city or town in which either of them resides," then a special commissioner should be called in. The court said: "We are of opinion that the clause which prohibits a commissioner from acting upon a road question arising in the same town, is not applicable to these proceedings. The judgment of the commissioners is to be exercised on an entirely different question, and if it had been intended to disqualify the residents of the towns named, there would have been an express provision to that effect."

It thus appears that the statute in reference to the establishment of roads was attempted to be applied to the drainage laws of that State, and the court held it did not apply. The court also held that mere residence in the town did not of itself, outside of any statutory provision, create such an interest in the cause as to make such resident incompetent to act as a commissioner. But that is very different from the case at bar. There the commissioner had no personal pecuniary interest. In the case at bar he had. Hence, the inapplicability of that case to the case at bar.

In the case In re Southern Boulevard, 3 Abb., Pr. (N. S.) 447, also relied on by the plaintiff, it was held that a commissioner who owned some lots that were taken by the proceeding, was not thereby an incompe-

tent commissioner, upon the maxim that no man can be a judge in his own cause. The decision is placed upon the grounds that the court was not aware of that fact when it appointed the commissioners, that no special injury appeared to have resulted to any one because of such interest, but that the affidavits filed in support of the application to confirm the report, showed the reverse to be true, and that even if these things were not sufficient in law, still the maxim did not apply because it applies only to judicial officers and not to quasi-judicial officers like commissioners, and that the commissioner did not act in the appraisement of his own land, and that the objection was waived because it was not made at the time the appointment was made.

Of this case it is only necessary to say that it is not in harmony with the analogous decisions of this court, hereinbefore referred to. Furthermore, it is not in line with the great weight of authority in England and America. [17 Am. and Eng. Ency. of Law (2 Ed.), p. 732, and cases cited in notes.]

In Doddridge v. Stout, 9 W. Va. 703, it appeared that the statute required the commissioners to be freeholders, and that one of those who was appointed and acted was not a freeholder and it was held that there was nothing in the record to show that defendant was prejudiced thereby and that he waived the objection by not urging it when the commissioner was appointed.

The rule laid down by HURLBUT, J., in Oakley v. Aspinwall, 3 N. Y. 547, rests upon a much better and sounder basis than that announced in the West Virginia case. In the New York case the learned judge said: "It is of great importance that the courts should be free from reproach or suspicion of unfairness. The party may be interested only that his particular suit should be justly determined; but the State, the community, is concerned not only for that, but that the judiciary shall enjoy an elevated rank in the estimation of mankind. The party who desired it ought to be per-

mitted to take the hazard of a bias decision, if he alone were to suffer for his folly, but the State can not endure the scandal and reproach which would be visited upon the judiciary in consequence."

Judge COOLEY, in his work on Constitutional Limitations (6 Ed.), p. 207, says: "And for similar reasons a legislative act which should undertake to make a judge the arbiter in his own controversies would be void, because, though in form of a provision for the exercise of judicial power, in substance it would be the creation of an arbitrary and irresponsible authority, neither legislative, executive nor judicial, and wholly unknown to constitutional government."

The learned judge further says, p. 506, et seq.:

"There is also a maxim of law regarding judicial action which may have an important bearing upon the constitutional validity of judgments in some cases. No one ought to be a judge in his own cause; and so inflexible and so manifestly just is this rule, that Lord COKE has laid it down that 'even an act of Parliament made against natural equity, as to make a man a judge in his own case, is void in itself; for *jura naturae sunt immutabilia*, and they are *leges legum*.'

"This maxim applies to all cases where judicial functions are to be exercised, and excludes all who are interested, however remotely, from taking part in their exercise. It is not left to the discretion of a judge, or to his sense of decency, to decide whether he shall act or not; all his powers are subject to this absolute limitation; and when his own rights are in question, he has no authority to determine the cause. Nor is it essential that the judge be a party named in the record; if the suit is brought or defended in his interest, or if he is a corporator in a corporation which is a party, or which will be benefited or damnified by the judgment, he is equally excluded as if he were the party named. Accordingly, where the lord chancellor, who was a shareholder in a company in whose favor the vice-chancellor

had rendered a decree, affirmed this decree, the House of Lords reversed the decree on this ground, Lord CAMPBELL observing: 'It is of the last importance that the maxim that "no man is to be a judge in his own cause" should be held sacred. And that is not to be confined to a cause in which he is a party, but applies to a cause in which he has an interest.' 'We have again and again set aside proceedings in inferior tribunals, because an individual who had an interest in a cause took a part in the decision. And it will have a most salutary effect on these tribunals, when it is known that this high court of last resort, in a case in which the lord chancellor of England had an interest, considered that his decree was on that account a decree not according to law, and was set aside. This will be a lesson to all inferior tribunals to take care, not only that in their decrees they are not influenced by their personal interest, but to avoid the appearance of laboring under such influence.'

"It is a matter of some interest to know whether the Legislatures of the American States can set aside this maxim of the common law, and by express enactment permit one to act judicially when interested in the controversy. The maxim itself, it is said, in some cases, does not apply where, from necessity, the judge must proceed in the case, there being no other tribunal authorized to act; but we prefer the opinion of Chancellor SANDFORD, of New York, that in such case it belongs to the power which created such a court to provide another in which this judge may be a party; and whether another tribunal is established or not, he at least is not entrusted with authority to determine his own rights, or his own wrongs.

"It has been held that where the interest was that of corporator in a municipal corporation, the Legislature might provide that it should constitute no disqualification where the corporation was a party. But the ground of this ruling appears to be, that the interest is

Vol 176 mo—37

so remote, trifling and insignificant, that it may fairly be supposed to be incapable of affecting the judgment or influencing the conduct of an individual. And where penalties are imposed, to be recovered only in a municipal court, the judges or jurors in which would be interested as corporators in the recovery, the law providing for such recovery must be regarded as precluding the objection of interest. And it is very common, in a certain class of cases, for the law to provide that certain township and county officers shall audit their own accounts for services rendered the public; but in such case there is no adversary party, unless the State which passes the law, or the municipalities which are its component parts, and subject to its control, can be regarded as such.

"But except in such cases resting upon such reasons, we do not see how the Legislature can have any power to abolish a maxim which is among the fundamentals of judicial authority. The people of the State, when framing their Constitution, may possibly establish so great an anomaly, if they see fit; but if the Legislature is entrusted with apportioning and providing for the exercise of the judicial power, we can not understand it to be authorized, in the execution of this trust, to do that which has never been recognized as being within the province of the judicial authority. To empower one party to a controversy to decide it for himself, is not within the legislative authority, because it is not the establishment of any rule of action or decision, but is a placing of the other party, so far as that controversy is concerned, out of the protection of the law, and submitting him to the control of one whose interest it will be to decide arbitrarily and unjustly.

"Nor do we see how the objection of interest can be waived by the other party. If not taken before the decision is rendered, it will avail in an appellate court; and the suit may there be dismissed on that ground. The judge acting in such a case is not simply proceeding

irregularly, but he is acting without jurisdiction. And if one of the judges constituting a court is disqualified on this ground, the judgment will be void, even though the proper number may have concurred in the result, not reckoning the interested party.''

In addition to the cases cited in support of the text, other English and American cases holding that it is beyond the power of Parliament or of a Legislature to confer upon a person the right to act as judge in any controversy in which he is personally and pecuniarily interested, are collated in 17 Am. and Eng. Enc. of Law (2 Ed.), p. 733, and notes.

Without further elaboration, it follows that Seaman was not a competent commissioner, and that the circuit court was right in so holding and in setting aside the report of the commissioners and the judgment of the county court.

The judgment of the circuit court must therefore be affirmed, and the cause remanded to the county court of Lincoln county, to be by it taken up and tried as if the original petition was presented to it for the first time, and to proceed with the cause without regard to anything that has heretofore been done in the cause, but in conformity herewith and with the statute. All concur, except *Robinson, J.*, absent.