Farr, J.
This cause was heard on appeal. The action below was to restrain the treasurer of Guernsey county from collecting certain assessments made by the trustees of Center township, for the purpose of the improvement of a certain road known as the National Pike.
The case was heard below, and a judgment entered, from which an appeal was taken to this court.
The facts necessary to a proper understanding of the issues are as follows:
*313 In the year 1914 it was desired to improve what is known as the “National Pike,” through Guernsey county, including Center township. Looking toward that end the trustees of the various townships through which the improved roadway 'would pass were requested to pass the necessary legislation providing for the discharge of a part of the obligation to be incurred for the improvement, which was undertaken under favor of the then law of Ohio, as then provided in 102 Ohio Laws, page 343 (Section 1208, General Code), which related to the apportionment of the expense of certain road construction.
Later, action was taken by the trustees of Center township under the provisions of Section 1210-1, General Code (103 O. L., 457).
After the passage of the original resolution by the township trustees January 1, 1915, further steps were taken looking toward the improvement of the road. By the passage of that resolution it was decided that the township should provide for twenty-five per cent, of the cost of the improvement — fifteen per cent, to be paid by the township and ten per cent, by the abutting property owners. At the time this resolution was passed, John Boyd, John Noble and Winfield M. Larrick were the trustees of Center township. Boyd’s real estate abutted for about 4700 feet on the improvement.
The board of trustees met on the 5th day of June, 1915, with reference to this matter, and passed a resolution as follows:
“The following resolution was presented by John Boyd and seconded by Noble. Resolved, That the trustees of Center township assume three per cent. *314 of the ten per cent, that the abutting landowners along the National Pike were to pay for the improvement on said road.”
The vote was as follows: Boyd, yes; Noble, yes; Larrick, nay.
On the 16th of August, 1919, another resolution was passed by the board of trustees of Center township, which at that time had changed as to membership, there continuing on the board but one of those who were members at the time the resolution was passed in June, 1915, two other persons having been elected at a subsequent election. The action of the board on August 16, 1919, rescinded the resolution of June 5, 1915.
The three per cent, of the ten per cent, which was assumed by the resolution of June 5, 1915, should not be understood as three per cent, of ten per cent., but 3 per cent, deducted from 10 per cent., leaving a balance of 7 per cent.
The assessment certified by the subsequent board of trustees to the county auditor of Guernsey county, and by him placed upon the tax duplicate for collection against the abutting property owners, was for the full amount of the ten per cent, to be paid by the abutting property owners along this improved roadway; that is to say, that instead of certifying seven per cent, to be paid by these abutting property owners, they were to pay ten per cent., as originally provided.
The contention arises therefore with reference to the assessment certified and the one which it is claimed should have been certified. There is, of course, a difference in these assessments in a substantial sum and it is to enjoin the collection of the *315 amount between seven and ten per cent, that this action was brought, Oliver claiming that he should pay only seven, while the treasurer of Guernsey county and the trustees of Center township claim that he should' pay thé full ten per cent.
The issue therefore turns upon the question of the right of John Boyd to offer the resolution of June 5, 1915, thereby relieving himself, as an abutting landowner, of the three per cent., and by his deciding vote to carry the resolution in the affirmative. It will be recalled that Larrick voted nay; Noble voted yea.
As above stated, Boyd presented the resolution and moved its adoption, and voted for it; there is therefore no dispute but that it was Boyd’s vote by which the resolution was passed. Boyd, however, later disposed of the property.
The vital issue is, therefore, as to his right to offer and vote for the resolution, in view of the fact •that at that time he was an abutting property owner on the improvement of the National Pike to the extent of 4706 feet, and it is practically conceded that if the township paid three of the ten per cent, assessed against these abutting property owners such payment would be a pecuniary advantage to Boyd of about $300; probably not this exact amount, but this is sufficiently correct for the present purpose. Therefore did John Boyd have the right as a township trustee to offer and vote for that resolution by which this three per cent, additional was assumed by the township, making a total of eighteen per cent, to the township and seven per cent, to the abutting property owners; or, in other words, did John Boyd have the right as a public official to act *316 to his own pecuniary advantage, and to the same extent to the public detriment?
The principle involved here is discussed in 22 Ruling Case Law, 461, paragraph 124, as follows:
“Every public officer is bound to perform the duties of his office faithfully and to use reasonable skill and diligence and to act primarily for the benefit of the public.”
Practically to the same effect is 29 Cyc., 1435.
Supporting the above text is Hornung v. State, ex rel. Gamble, 116 Ind., 458, 19 N. E. Rep., 151, 153, where the general principle as to the conduct of public officials, when their own pecuniary advantage is involved, is declared as follows:
“A township trustee is the agent of. his township in the transaction of its business, and hence, in the performance of his duties, he acts in a fiduciary, as well as an official, capacity. Therefore the rule which requires fair dealings and disinterested conduct. on the part of an agent or trustee towards those he represents, applies, with full force, to a township trustee.
“The law will not allow an agent or a trustee to place himself in such an attitude toward his principal, or his cestui que trust, as to have his interest conflict with his duty, and a township trustee is as much amenable to that rule as any other agent or trustee. As applicable to private rights, the enforcement of such a rule is imperatively necessary, and, as a matter of public policy, the recognition of such a rule is of equal, if not greater, importance. Greenhood Public Policy, 302.
“A public officer is impliedly bound to exercise the powers conferred on him with disinterested skill, *317 zeal and diligence, and primarily for the benefit of the public.”
And to the same effect is Board of Supervisors of Oconto County v. Hall et al., 47 Wis., 208, 2 N. W. Rep., 291, where the syllabus provides in part:
“Members of a legislative body or municipal board are disqualified to vote therein on propositions in which they have a direct pecuniary interest adverse to the state or municipality which they represent.”
Lyon, J., speaking for the court, at page 213, observes:
“The general rule of the common law is, that members of a legislative body or municipal board are disqualified to vote therein on propositions in which they have a direct pecuniary interest adverse to the state or municipality which they represent. The rule is founded on principles of natural justice and sound public policy. Perhaps the only recognized exception to this rule is the case where the body or board is permitted to fix the compensation of its members. This exception goes upon the necessity of the case, and the fact that all of the members are equally interested; and it has been well said that no principle can be derived from it. * * *
“In Coles v. Trustees of Williamsburgh, 10 Wend., 659, the same principle was applied to á village trustee. Mr. Justice Nelson said, in substance, that such trustee was disqualified by general principles of law to vote on a certain proposition before the board of trustees affecting his property.”
A very recent case and well upon the point is Stahl v. Board of Supervisors of Ringgold county, *318 187 Ia., 1342, 11 A. L. R., 185, 175 N. W. Rep., 772, where it is held that one owning land within a proposed drainage district which will be largely-increased in value by the establishment of the district cannot cast the deciding vote for the establishment of such district. See also Vandalia Levee & Drainage Dist. v. Hutchins, 234 Ill., 31, 84 N. E. Rep., 715; Commis. of Union Drainage Dist. No. I v. Smith, 233 Ill., 417, 84 N. E. Rep., 376, and King’s Lake Drainage & Levee Dist. v. Jamison, 176 Mo., 557, 75 S. W. Rep., 679.
The same principle is declared in United Brethren Church of New London v. Vandusen, 37 Wis., 54; Pickett v. School Dist. No. One, Town of Wiota, 25 Wis., 551; United States, ex rel. Masslich, v. Saunders, City Treas., 124 Fed. Rep., 124, and State, ex rel. Rosenheim, v. Hoyt, 2 Ore., 246.
The. facts in the foregoing cases have not been discussed for the reason that they are scarcely important in view of the fact that the cases are declaratory of the common law in the parts cited, which must control here, since there is no specific Ohio statute on the subject. C., H. & D. R. R. Co. v. Morris, 6 C. D., 640, and Adkins v. City of Toledo, 17 C. D., 417, are cited for defendants, but upon examination are not found to be particularly upon the point, while State Life Ins. Co. v. Harvey, 72 Ohio St., 174, 188, announces the correct principle and is somewhat helpful here.
It is true that the section of the General Code in force at Ihc time, Section, 1210-1 (103 O. L., 457), specifically provides:
*319 "The township trustees of any township in which a highway is constructed under the provisions of this chapter may, by resolution, waive any part or all of the apportionment of the cost and expense of such highway as herein provided to be paid by the county or abutting property owners and assume any part or all of the cost and expense of such highway improvement in excess of the amount received from the state up to the entire cost and expense of such highway improvement without an assessment upon the county or owners of abutting property upon such highway.”
However, it was not the purpose of the foregoing statute to so far abrogate or change the commohlaw rule as to permit a public official to use his authority as such to promote his own pecuniary welfare ; clearly it applies! only in a situation where no financial or material personal advantage is to be gained, because every public official is, in a way, an agent and as such owes his first duty to his constituents and* the unselfish discharge of every official obligation; in fact, he is charged with the exercise of the most perfect good faith as expressed in the term or maxim, "Uberrima fides” Any less obligatory rule would afford opportunity for unconscionable advantage.
In the instant case Boyd would be benefited in the sum of approximately $300, which would necessarily have to be paid by the people by whose favor he obtained office; therefore the foregoing cases and authorities rest well within the rule of reason and are fairly conclusive of the issue here.
*320 It follows, therefore, that for the reasons given, judgment must be entered for defendants, and it is so ordered.
Petition dismissed, and judgment for defendants.
Pollock and Roberts, JJ., concur.