THOMAS C. WILSON, Administrator of Estate of
HENRY W. PERKINS, Appellant, v. KING'S.
LAKE DRAINAGE & LEVEE DISTRICT.

In Banc, April 2, 1914.

1. **SPLITTING CAUSE OF ACTION:** Manifested by Petition:
Demurrer. If there has been a splitting of the cause of action
it must be manifested by the petition, if the only other plead-
ing is a demurrer to the petition charging that it does not state
a cause of action. Where the petition shows that the action is
one for debt in the amount of certain warrants issued without
authority of law by a drainage district for the construction of
a levee therein, and not a suit on the warrants themselves,
in order to justify a holding that there were other outstanding
warrants of the same character and that in consequence plain-
tiff has split his cause of action, the fact that there were
other outstanding warrants unpaid must be manifested by the
petition itself in the face of a demurrer thereto charging that
it does not state a cause of action, even though it can be
gathered from the bill that there had been other outstanding
warrants.

2. **ASSIGNMENT OF CAUSE OF ACTION:** Estoppel. One cannot
aid in the prosecution of a claim by another without estopping
himself from setting up a claim to the same thing. Where
suit is brought by the assignee of warrants issued by a drain-
age district which had never been legally organized, not upon
the warrants themselves, but for debt in the amount of the
warrants, and upon the assignee's death the assignor is substi-
tuted as his administrator and as such prosecutes the suit,
whether or not the assignment of the warrants was in law
an assignment of the cause of action is wholly immaterial, for
the assignor could never prosecute a suit on the warrants, and
there is no danger that the district will twice have to pay the
amount thereof. In addition, the action of the assignor in com-
ing into and prosecuting the suit brought by the assignee is:
of itself an acknowledgment of a valid assignment of the cause
of action.

3. **CORPORATIONS:** Drainage District: Reorganization: Debts.
Municipal corporations do not extinguish their debts by merely
changing their names or reorganizing under new charters; and
a drainage and levee district organized under the laws of this
State to construct ditches and levees to drain the lands therein

is a municipal corporation. And where an attempted organization of a drainage district has been adjudged to be illegal (because one of the commissioners appointed to lay out and construct the work was not disinterested and competent), and thereafter a new corporation is legally organized to conserve the same purposes for the same landowners and pertaining to the same territory, and utilizes the same franchises to the same end as its predecessor, and appropriates and uses the ditches and levees constructed by it, the new corporation is liable for the debts incurred in said construction.

4. DRAINAGE DISTRICT: Illegally Organized: De Facto Corporation During Appeal: Debts. A petition was presented to the county court praying for the organization of a drainage and levee district. The county court granted the prayer, and appointed three persons to lay out and construct the work. They made a report, changing the proposed boundary, excluding the lands of one of them, assessing the total damages and total benefits, and apportioning them against the lands. The county court overruled exceptions to the report, approved it, entered judgment establishing the district and declared it to be a body corporate. On appeal to the circuit court and to the Supreme Court it was adjudged that one of the commissioners was not "competent," and the cause was remanded to the county court "to be by it taken up and tried as if the original petition were presented to it for the first time, and to proceed with the cause without regard to anything that has heretofore been done in the cause." Pending the appeal the three commissioners proceeded to let contracts for the construction of the levees, and upon their completion issued warrants in payment for the work, some of which are held by plaintiff, who had constructed twelve miles of a levee. After the adjudication in the Supreme Court the county court took up and heard the original petition filed in the cause, found the establishment of the district to be necessary, appointed commissioners, modified and approved their report, and entered judgment declaring the district organized, incorporating the same territory and the same inhabitants under the same statutes. The new district appropriated the twelve miles of levee constructed by plaintiff, and remitted the original cost thereof to the landowners and credited the amount thereof on their assessments, and plaintiff sues as for debt, for the amount of the warrants, but not on the warrants themselves. Held, that during the pendency of the appeal the original attempted organization was a de facto corporation, and the new, having succeeded to all franchises and rights of the old, is liable for its debts.

5. ———: ———: Appropriation of Levee. Under the statutes governing drainage and reclamation of overflow lands (which

are by Sec. 5573, R. S. 1909, to be liberally construed) a drainage and levee district, regularly and legally organized, has power to appropriate an existing levee constructed under the authority of a *de facto* district whose organization was not legal because the statutes had not been followed and to whose purposes and franchises it has succeeded, and to incorporate such levee into its own system of levees and ditches.

6. ———: ———: ———: **Estoppel: Debts.** Estoppel can be successfully invoked against a municipal corporation which acts within the scope of its statutory authority. Where it enters into a contract, or becomes obligated to another by operation of law, within powers conferred upon it by statute, it is estopped to deny the binding force and effect of such contract or obligation to the same extent as would an individual.

Appeal from Lincoln Circuit Court.—*Hon. James D. Barnett,* Judge.

REVERSED AND REMANDED.

*F. L. Schofield* and *E. B. Woolfolk* for appellant.

(1)   The defendant had a valid *de facto* existence at the time of incurring the obligations sued on, and cannot now escape liability thereon.   While it may be conceded that the defendant corporation was never a perfectly constituted *de jure* corporation until the entry of the second judgment of the county court confirming the report of the commissioners of November 29, 1904, it by no means follows that it had no real or responsible existence prior to that date.   Our contention is that the body which, under the name "King's Lake Drainage & Levee District," entered into the contract with Wilson's assignor for the building of this twelve miles of the levee, was and is the defendant in this case and none other.   That the contract was precisely such as a levee and drainage district might enter into and was entered into in the precise manner required by the statute.   That at the time of entering into this contract the defendant had a legally accountable and responsible *de facto* corporate existence with

adequate capacity and authority to enter into and bind itself by this contract, at least to the extent that its potential liability became complete by its thereafterwards enlarging its *de facto* existence into an existence *de jure* and accepting and prosecuting to completion the work already done under this contract. And that under the circumstances set out in the petition the defendant is estopped to deny either its said identity or its liability. 8 Am. & Eng. Ency. Law, p. 747; 2 Cook on Corp. (4 Ed.), pp. 1233, 1238; 10 Cyc. Pl. & Pr., pp. 249, 1066; Morawetz on Corp. (1 Ed.), sec. 143; 3 Am. R. R. & Corp. Rep. 662; Roll v. Smelting Co., 52 Mo. App. 66; 2 Beach on Priv. Corp., 1248; Note to 2 Cook on Corp. (4 Ed.), p. 1235. The principles relating to and governing the question of the existence of *de facto* corporations, are not confined to private corporations. They are equally applicable to public or quasi-public corporations of the exact character of the defendant drainage district. Savings Inst. v. Board of Education, 75 Mo. 408; Rice v. McClelland, 58 Mo. 116; Sayre v. Tompkins, 23 Mo. 443; Speer v. Board of Co. Com'rs, 88 Fed. 749; Herring v. Irrigation Dist., 95 Fed. 705; Miller v. Irrigation Dist., 85 Fed. 693; Irrigation Dist. v. Shepard, 185 U. S. 1. (2) But passing the question of the actual identity of the defendant corporation while acting under and through its lastly appointed commissioners, with the *de facto* corporate body executing the obligations in suit acting through the commissioners first appointed, and treating them for the nonce as distinct and separate bodies, there would still remain a legal identity by succession, the application of familiar principles of the law relating to which would render the defendant equally liable. And these principles seem applicable alike to all corporations public and private. Where a municipal corporation is organized embracing the same territory which was included in former towns, it is liable for all the obligations of the latter. The same

result also follows against an organized city which by extension of its limits takes in the territory embraced in former surrounding towns. Shapleigh v. San Angelo, 167 U. S. 646; Mount Pleasant v. Beckwith, 100 U. S. 514; Mobile v. Watson, 116 U. S. 289; Beach, Pub. Corp. (1893), sec. 476; Hughes v. School Dist., 72 Mo. 644; Thompson v. Abbott, 61 Mo. 177; Evans v. Bank, 79 Mo. 186; Grand River College v. Robertson, 67 Mo. App. 336. (3) It was perfectly competent for the defendant drainage district, through its new commissioners after due appointment, to ratify what had been previously done by the first commissioners, although done before acquiring full legal authority. 1 Dillon Mun. Corp. (4 Ed.), sec. 463; Water Co. v. Aurora, 129 Mo. 583. (4) The defendant should be estopped to deny its liability in this action. It is undoubtedly true that many of the rules of estoppel which ordinarily govern private corporations have no application to public or quasi-public corporations. But the estoppel here invoked does not rest alone nor chiefly upon the mere acceptance and appropriation of the twelve miles of levee built under the Wilson contract. It is confidently maintained that this contract was neither an unauthorized nor an illegal one. The very purpose of creating the defendant drainage district corporation was to build this twelve miles of levee along with other like work. The contract was entered into and the work was done in the precise manner required by the statute. True this was while the drainage district had only a *de facto* corporate existence; but when this *de facto* existence afterwards ripened into a *de jure* existence, its newly appointed commissioners found that this much of the levee had already been built by their predecessor commissioners and therefore reported to the county court that the twelve miles of levee "could and would be and had been adopted, availed of, and used as a part of the work committed to them to be done."

*O. H. Avery* and *William A. Dudley* for respondents.

In developing the legal principles upon which the defense to this case rests, no attention need be given to the general proposition often recognized in this State, that one corporation succeeding another by re-organization or merger, takes its property and assumes its obligations. The defense rests upon principles as well established but lying outside of the doctrine of the case cited by appellant to prove that point. (1) Drainage districts organized under the provisions of Article 5, chap. 122, R. S. 1899, are not private corporations having general powers, but are public corporations, exercising limited powers delegated to them for specific purposes by the State. Morrison v. Morey, 146 Mo. 543; Land & Stock Co. v. Miller, 170 Mo. 240; State ex rel. v. Drainage Dist., 192 Mo. 517. And the proceedings by which the lands of the property owners of the district may be charged with any burden are identical in principle with those employed in paving streets and building sewers in the city, where a specific sum is raised and charged against the benefited lands and expended for the specific purpose for which it is raised. Land & Stock Co. v. Miller, 170 Mo. 240. (2) The first point being conceded, and every step in the proceedings prior to 1903, except the filing of the petition having been declared utterly void (Jamison Case, 176 Mo. 557), we have the single question, had the defendant the power to charge the lands of the district with the obligations contracted by the illegally constituted board of 1894, and if it had such power, has it exercised it in such a way as to legalize those obligations? As shown by the Jamison Case, there were no legal officers of the district, no funds, no assessments and no right of way to build upon and no corporation, at the time Wills made the contract and Wilson performed the work for which the warrants

sued on were issued. The case presented, therefore, is that of one who has contracted with the assumed agent of a non-existing principal, the effect of which is that either the agent alone or no one is bound. Mechem on Agency, secs. 541-550; Bishop on Contracts, secs. 1119-1120; 31 Cyc. 1548-1549, pars. 2 and 3; Michael v. Jones, 84 Mo. 578; Humphrey v. Jones, 71 Mo. 62; Jaquemin v. Andrews, 40 Mo. App. 507. (3) Merely completing the organization in the name and in accordance with the general plans proposed in the original petition, would not amount to the ratification of the illegal proceedings previously had, otherwise the county court would have had no option but to enforce those illegal contracts or dismiss the petition. (4) The old levee being on the right of way under the plan of improvements finally adopted it had to be used, removed, or the organization abandoned. Wilson suffered no loss by its use. Defendant had no election between accepting or rejecting the work. Hence, on general principles, there was no estoppel. 16 Cyc. 787, par. b; 31 Cyc. 1267-1270. (5) "Such corporations can only make contracts when authorized, and as authorized, by law. Individuals may waive irregularities by subsequent assent, but on behalf of the taxpayers, there is no one authorized to waive anything." State ex rel. v. Saline Co., 45 Mo. 242; Heidelberg v. St. Francois Co., 100 Mo. 69; Drainage Dist. v. Daudt, 74 Mo. App. 575; Maupin v. Franklin Co., 67 Mo. 327; Bernard v. Knox Co., 105 Mo. 382; State ex rel. v. Thomas, 183 Mo. 220; Book v. Earl, 87 Mo. 246; Phillips v. Butler Co., 187 Mo. 698; Bauer v. Franklin Co., 51 Mo. 208; Seaman v. Drainage Dist., 219 Mo. 1. (6) While it is, in some instances, competent for a municipal corporation to ratify an unauthorized act done in its behalf, this can only occur where the act was within the scope of the powers of the corporation, and where the ratification is accomplished in the special mode prescribed by law for the performance of the

act. State ex rel. v. Cowgill, 156 Mo. 634; Johnson v. School Dist., 67 Mo. 319; State v. Lawrence, 178 Mo. 372; Milligan v. Lexington, 126 Mo. App. 715; Neill v. Gates, 152 Mo. 585. (7) But aside from the general principles already considered, there are difficulties inherent in the constitution of these districts which place it beyond their power to pay this sort of a claim. They are these: (a) The only purpose for which the court could make a special (or any) assessment under the Act of 1893 were: 1st. For the probable cost of the work proposed in the report, including all incidental expenses, and the cost of the procedure (9th Section). 2nd. The cost of maintenance of the ditch or work constructed, not to exceed annually 30 cents per acre (15th section). 3d. If the first assessment reported proves insufficient to complete the work, a further one could be made proportioned on the first (20th section); but of course only for the purpose of completing the work authorized at the time the original assessment was made. (b) The only time when the commissioners can do anything (except make preliminary surveys) that would create a charge against the district, is after the district has been legally organized (23d section). (c) The only purpose for which they are permitted to incur any indebtedness (except incidental expenses and cost of procedure) is for the construction of the work which they have been authorized to construct, and for which a legal assessment had already been made (21st section); (d) The only case in which they are permitted to issue promissory paper is where bonds are issued based on uncollected lawful assessments previously made (21st section); (e) The only case in which they are permitted to consider works previously constructed, is when that course is included in the prayer of the petition (9th section, par. 6). The following cases support the foregoing construction of the drainage act of 1893: Bank v. Drainage Dist., 82

Ill. App. 626; Drainage Dist. v. Kelsey, 11 N. E. (Ill.) 256; Badger v. Drainage Dist., 141 Ill. 540; Bank v. Drew, 191 Ill. 186; Winkleman v. Drainage Dist., 170 Ill. 37; State ex rel. v. Winkleman, 96 Mo. App. 223. This act was transplanted here from Illinois. 1 Starr Ann. Statutes (1885), p. 919. The act of 1869 upon which the Sheridan and Holt county cases (93 Mo. 321 and 135 Mo. 533) were decided is entirely different from that of 1893. See Laws 1869, pp. 64 and 65, secs. 5, 6, and 9, where the duty to make the successive levies is expressly imposed. No court will, by mandamus, require a public corporation to perform an act contrary to the law under which it was organized. Plaintiff has no right to a judgment, the enforcement or payment of which would be only in violation of the law. (8) A corporation possessing general powers and general funds, or the power to levy them, might well be held bound on a void contract in a proper case upon the grounds of estoppel. The defendant here has neither. The analogy to a street paving or sewer construction proceeding is complete in this case. The taxes which may be levied are special taxes and the purpose for which they may be levied is specific, they cannot lawfully be diverted from that purpose. The time when, the place where, and the conditions under which they may be levied are also specific and exclusive. There can be no other. Preceding such a levy, many important, specific and definite steps must be taken. King's Lake Dist. v. Jamison, 176 Mo. 557; St. Louis v. Rankin, 96 Mo. 505; Michael v. St. Louis, 112 Mo. 610; Springfield v. Weaver, 137 Mo. 650; Wheeler v. Poplar Bluff, 149 Mo. 36; State ex rel. v. Winkleman, 96 Mo. App. 223; 8 Cyc. 1108, par. 2; Sedalia v. Donohoe, 190 Mo. 407.

GRAVES, J.—This is the second appearance of this case in this court. When first here we transferred it to the St. Louis Court of Appeals, because we thought the jurisdiction was there—Wilson v. King's Lake

Drainage & Levee District, 237 Mo. 39. Then, as now, the case stood upon a demurrer to plaintiff's petition. The Court of Appeals have thoroughly thrashed out the question. That court first held that the trial court was right in sustaining the demurrer to plaintiff's petition, but upon motion a rehearing was granted and had, and upon the second hearing a majority of that court was of opinion that the plaintiff's petition stated a good cause of action, and accordingly reversed the judgment of the circuit court. One of the judges of the Court of Appeals dissented, and asked that the cause be transferred to this court, and in obedience to a proper order of transfer the case is here for final determination.

As stated the defendant in the circuit court filed a demurrer, and upon that being sustained, the plaintiff refused to further plead, and judgment was entered against him, from which this appeal was taken. When the cause was here before, we undertook to outline the petition, and although the document is a very lengthy one, yet we think the abbreviated outline made of it then, fully presents the petition. In fact when we then outlined the petition it was done with the idea of passing upon the merits of the case, and it was only after we had fully analyzed the petition, that we became convinced of our want of jurisdiction, the question upon which the case ultimately passed from this court at that time. The petition undertakes to plead at length all the facts of the case.

When here before we thus stated the facts pleaded:

"This is an action to recover a money judgment, and a serious question is as to our jurisdiction, under the act of 1909, increasing the jurisdiction of the Courts of Appeals to $7500. This case was not submitted to this Court until long after that act took effect, and if the amount involved is less than $7500 it is our duty to certify the cause to the proper Court of Appeals. The appeal in this case was taken October 17, 1906. Plain-

tiff filed a petition, to which a demurrer was filed and sustained. To determine the amount we must, therefore, go to the petition itself. We are not bound by the prayer of the petition, but must take the whole instrument and determine what sum is involved and at issue at the date of the judgment from which the appeal is taken. [Wilson v. Russler, 162 Mo. 565; Wolff v. Matthews, 98 Mo. 246; Milling Co. v. Walsh, 97 Mo. 287; State ex rel. King v. Gill, 107 Mo. 44.]

"The prayer of this petition reads: 'Wherefore, premises considered, plaintiff prays judgment against the defendant for the said sum of $5672.56, the amount of said indebtedness so evidenced by said warrants, with six per cent interest per annum on the respective sums mentioned in said warrants, respectively, from the said dates thereof respectively. And that plaintiff have such other, further and general or special relief in the premises as equity may require and as to the court shall seem meet.'

"But going to the petition itself, we find this state of facts. In 1894, under the Act of 1893 (Laws 1893, p. 188) a proper number of persons residing and owning swamp and overflow lands in Pike and Lincoln counties, this state, presented their petition to the county court of Lincoln county, praying said court for the organization of the 'King's Lake Drainage and Levee District.' The petition was filed in Lincoln county because the greater portion of the lands to be incorporated therein was situated in that county. To this petition remonstrances were filed, and after the consideration of both petition and remonstrances, the prayer of the petitioners was granted, and three commissioners were appointed to lay out and construct the work, one of whom was W. J. Seaman. These commissioners made their report as required by statute, and at the May term of the said county court in the year 1895 said drainage district was established under the name hereinabove set out, and the same was declared to be a body corpo-

rate.   One Jamison, who had remonstrated, and whose lands were charged with $5726 benefits and credited with $205.56 damages, appealed to this court.   [King's Lake Drainage and Levee District v. Jamison, 176 Mo. 557.]   The closing language of the opinion of this court in that case best describes our disposition of it.   Such language is:  'Without further elaboration, it follows that Seaman was not a competent commissioner, and that the circuit court was right in holding and in setting aside the report of the commissioners and the judgment of the county court.   The judgment of the circuit court must therefore be affirmed, and the cause remanded to the county court of Lincoln county, to be by it taken up and tried as if the original proceeding was presented to it for the first time, and to proceed with the cause without regard to anything that has heretofore been done in the cause, but in conformity herewith and with the statute.'   This opinion was handed down at the April term, 1903, of this court.   The reason for thus disposing of the case is fully discussed in the opinion and further note of it need not be made herein.

"Pending the appeal in the Jamison case, the three commissioners proceeded to let contracts for the work of constructing the required levees and drains.   The contract was awarded to A. V. Wills & Son in 1894, and on October 21, said Wills & Son entered into a contract in accordance with this award.   Later, in 1895, this contract was assigned to Thomas E. Wilson.   In said work were twelve miles of levee which Wilson constructed.   The said drainage district, through its president and secretary, issued to Wilson warrants upon the treasury of said district from time to time as the work progressed.   Some were paid, but the four involved in this suit were not paid for want of funds.   These four aggregated $5672.56.   The first is for $4437.10, and is dated May 22, 1896, and on its face calls for six per cent interest from date.   The second is for $291.10, of date December 14,

1897, with interest as the first warrant. The third is for $279.79, of date February 4, 1901, with interest as above. The fourth is for $664.57, of date October 16, 1902, with interest as first stated. The first two above described were issued to Wilson and by him assigned to H. W. Perkins. The last two were issued direct to Perkins in lieu of other warrants theretofore assigned to him by Wilson. Perkins brought the suit, but died before the trial, and Wilson, who had been made his administrator, became party plaintiff.

"Upon the filing of the mandate of this court with the county court that court proceeded as by our opinion directed. On November 13, 1903, the county court took up and heard said petition and found that the establishment of said drainage district was necessary, and again appointed three commissioners. In August, 1904, those commissioners filed their report, and on November 29, said report coming on for hearing was duly heard and by the court modified and approved, and on said date the court adjudged said district to be a drainage district under the name of 'King's Lake Drainage and Levee District' and such was adjudged to be a body corporate on that date. These commissioners proceeded with the work and completed the levee and other work as described in the original petition. The petition, after charging all the matters which we have hereinabove detailed in brief, then specifically says:

" 'That in the construction of said work said commissioners adopted, appropriated and used said old levee its entire length of twelve miles and made same a part of and included same in the work so by them to be done, as such commissioners, for and on behalf of and as the corporate authority of the defendant King's Lake Drainage & Levee District, which thereupon and thereby received, accepted and appropriated the same with all the advantages and value thereof; and further that in pursuance of said report of said commissioners

and of the said order and judgment of said court confirming same, large credits were given and allowed to the various land owners in said district on their assessments of benefits, for and on behalf of said twelve miles of levee so adopted, appropriated and used, thereby indirectly saving to the commissioners the full cost and expense originally incurred in the construction of said levee and for which the indebtedness herein declared on then existed and then and now remains unpaid.

" 'Plaintiff says that the cost of said twelve miles of levee to the first or original commissioners of said district and their successors so appointed as aforesaid was the sum of $18690.92, and that same is and was reasonably worth that sum; and that for the building of same the said first named commissioners or their successors were unable to pay in full, but that said district was, at the time of the appointment of said last named or present comissioners and is yet, still largely indebted to plaintiff for the work of building the same; said indebtedness being evidenced by the treasury warrants hereinbefore referred to and then and now owned and held by plaintiff, all as aforesaid, and which said warrants are next set forth, filed and described as follows, to-wit:'

"Then follows a description of the warrants and the issuance thereof as we have shortly described above.

"Plaintiff then charges that the district issuing to him the described warrants and the present defendant are one and the same. The petition in this regard reads:

" 'Plaintiff says that the defendant King's Lake Drainage & Levee District is a continuation of and is one and the same corporate body as the King's Lake Drainage & Levee District under the contract with and for which the said Thomas C. Wilson constructed the said twelve miles of said levee and which, by its said first mentioned board of commissioners in consid-

eration thereof, executed to him the said warrants as hereinbefore set out. That by accepting, adopting, appropriating and using the said twelve miles of said levee so constructed as aforesaid, and making same a part of the work necessary to be done in protecting and reclaiming the lands within said district, the defendant is, and in equity and good conscience should be adjudged, to be held to have ratified and confirmed the acts of the said William J. Seaman, William H. Baskett and Frank L. Wilson, the first named board of commissioners, and their successors in office as aforesaid in constructing same and in the incurring of said indebtedness to said Wilson therefor so evidenced by said warrants now held and owned by plaintiff as aforesaid. And that in equity and good conscience the defendant is and ought to be held and adjudged to be liable to the plaintiff for the amount of said warrants and the interest accrued thereon. · And that the defendant and its present corporate authority are, and by reason of the premises ought to be held and adjudged to be, estopped and precluded from denying such liability. That plaintiff is without remedy, recourse or redress on said warrants or for the value of said work for which same were issued, or otherwise in the premises, against said district or the lands embraced and included therein or the owners thereof, except through or against the now legally constituted corporate body thereof, to-wit, the defendant herein.'

"The petition then avers that by reason of the premises and facts 'an action hath accrued to the plaintiff to demand and recover against the defendant the sum of $5672.56, the amount of the principal sum of said warrants numbered 51, 92, 189, and 218, and also lawful interest on the several sums mentioned in said warrants, respectively from their respective dates aforesaid.'

"A thorough examination of the petition shows that the action is not one upon the warrants themselves

but for a debt equal in amount to the warrants. The petition shows that this defendant was not incorporated until 1904 and that this judgment appealed from was entered in 1906.''

Other specific portions of the petition may have to be more fully set out, but if so it will be done in the course of the opinion. This sufficiently states the case.

I. Before reaching what we deem the vital question in this case some preliminary matters suggested by the respondent should receive consideration. We do not think (and so held when the case was first here) that the petition is bottomed upon the warrants themselves. In other words that the suit is not one upon the warrants issued by the old district. With this holding in mind the respondent urged in the Court of Appeals, and urges here, that there were other outstanding warrants for the same work, and hence there has been a splitting of a cause of action. If this be true we must find it in the petition, because in the present status of the case that is our only source of information. The majority opinion of the St. Louis Court of Appeals rightfully disposes of this contention in this language:

*Splitting Cause of Action.*

''From a careful reading of the bill, we find no facts averred therein to the effect that a portion of the account for services in constructing the levee other and distinct from that declared upon here is outstanding in the hands of other parties. There is nothing in the bill that we have been able to discover which reveals a splitting of demands or that the plaintiff here sues for only a portion of the amount due for building the levee. Though it be true that the warrants here described in the bill and others were issued, it may be true as well, for aught that appears, that all of that indebtedness has been paid save that now sued for. This being true, of course, the question of splitting of demands is not in the case.''

We have likewise gone over this lengthy bill and find no allegations therein which would authorize the inference that there were others interested than the present plaintiff. It can be gathered from the bill that there had been other outstanding warrants, but it can also be gathered from the bill that the four warrants mentioned in the bill were the only ones then unpaid. Suffice it to say that the bill on its face does not show that there has been a splitting of a cause of action (whatever the facts may be) and it is only the bill which we have in solution now. It is quite probable that had there been other outstanding warrants in the hands of others, such persons would have joined in the action. This point is ruled against defendant.

II. In this court, by brief filed here for the first time, we have presented a "bran new" proposition. It is urged that the plaintiff herein has **Assignment of Cause of Action.** shown no title to his alleged cause of action. This new question is predicated upon these facts. The bill charges that all four warrants mentioned in the bill, were originally issued to T. C. Wilson; that all were assigned by Wilson to W. H. Perkins; that afterward two of them were taken up by the old corporation and two new warrants were issued in lieu thereof to Perkins; that these several assignments (differing only in dates) were in this language:

> For value received .... I .... assign the within Warrant to .... H. W. Perkins .... this 5th .... day of .... December, 1896 ............................................ T. C. Wilson.

The point made is that such an assignment is not sufficient to pass the title of the present cause of action from Wilson to Perkins. In this connection it should be remembered that the present suit is Perkins' suit. Pending the suit, Perkins died, and Wilson, the assignor, became his administrator, and continued the suit.

We need not go into a discussion of the technical question as to whether this assignment of the warrants by Wilson to Perkins, strictly speaking, operated as an assignment of Wilson's cause of action, if any he had, outside of a suit upon the warrants themselves. Defendant is in no position to be harmed in this case. If Wilson had a cause of action, such as is being prosecuted in this suit by Perkins, through him, the defendant will never have to respond but once to such cause of action. Wilson, the original owner of the cause of action, is now here prosecuting it in the name of Perkins, and as the administrator of Perkins. He himself could never hereafter prosecute the same claim in his own individual behalf. No court would permit such an action to be successfully maintained, if brought. In other words, Wilson by his conduct in the case, has estopped himself from further claiming any title to the cause of action, and all this appears from the face of the record before us. One can not aid in the prosecution of a claim by another, without estopping himself from the same thing. [Davidson v. Davidson Real Estate and Investment Co., 249 Mo. l. c. 502-3.] But further, the act of Wilson coming into and prosecuting the suit brought by Perkins would of itself be an acknowledgment of a valid assignment of the cause of action to Perkins, even if it might be a question as to whether or not the first assignment was in all respects good.

Again we say the defendant can not be harmed. We hardly think that it is double payment which is feared by defendant. Its attitude would indicate an averse feeling toward even one payment of the claim. There is no substance in this contention and it will be disallowed.

III. The merits of this case are fully and ably discussed by NORTONI, J., in the majority opinion. We shall adopt as our views what he has

**Must a Municipal Corporation Pay the Debts of Its De Facto Predecessor?** written. We will preface his discussion of the merits by saying that what was said in this case when it was here before (237 Mo. l. c. 45) about the old proceeding being torn up root and branch by the opinion of this court in 176 Mo. 557, does not mean that prior to the decision in the Jamison case (176 Mo. 557) the drainage district was not a *de facto* corporation. Our language cannot be tortured into that meaning. The *de jure* corporation was disturbed and uprooted by the Jamison case, supra, whether rightfully or wrongfully, we see no necessity now to decide, but that during all that time (between the Jamison appeal and the judgment of this court) there was at least a *de facto* corporation we think there can be no question. We leave the argument of the matter to the opinion of Judge NORTONI. He says:

"A majority of the court are of the opinion that the bill states a cause of action. There can be no doubt that the prior drainage district with which Wilson contracted and for whom he performed the service in constructing the twelve miles of levee was a corporation *de facto*. The judgment of the county court erecting that corporation certainly did not reveal it to be void on its face. It finally failed as an entirety because of the fact that Seaman's wife owned land situated in the district, as will appear by reference to the decision of the Supreme Court overturning it. [King's Lake Drainage Dist. v. Jamison, 176 Mo. 557.] It has been said the judgment of the Supreme Court in that case 'cut up the prior drainage and levee district root and branch.' [Wilson v. King's Lake Drainage & Levee Dist., 237 Mo. 39.] It is no doubt true that the ostensible corporate entity there involved fell to the ground, but it seems the root remained under the express ruling of the Supreme Court to that effect. By the judgment of the Supreme Court overturning the prior corporation, the right was reserved to the peti-

tioners to proceed and incorporate the same territory and the same inhabitants under the same statutes and thus become clothed with the same franchises to the same end on the same petition, which afforded the basis for the prior incorporation. Touching this matter, the Supreme Court said, 'The judgment of the circuit court must therefore be affirmed, and the cause remanded to the county court of Lincoln county, to be by it taken up and tried as if the original petition was presented to it for the first time, and to proceed with the cause without regard to anything that has heretofore been done in the cause, but in conformity herewith and with the statute.' [King's Lake Drainage District v. Jamison, 176 Mo. 557, 579.] Therefore, though the corporation entity went out of existence and its branches fell by virtue of the judgment of the Supreme Court, the 'root' remained and it appears from the facts set forth in the bill that the present defendant corporation springs forth from the 'root' mentioned, that is, the identical petition upon which the former corporation *de facto* at least came into existence. It therefore sufficiently appears from the averments of the bill that the defendant corporation was organized for the same purposes, to serve the same lands and the same inhabitants under the same statutes as the prior one. This being true, the franchises thus gathered together for utilization through the corporate entity are to be regarded as the same identical franchises theretofore involved and such alone is the substance of corporate existence. [Winkleman v. Levee Dist., 171 Mo. App. 49.] The present defendant, or new corporation, should therefore be regarded as a continuation of the prior or old one to which the services were rendered in constructing the twelve miles of levee described in the bill. From other averments of the bill it appears that the present defendant took over the levee constructed by its predecessor *as a part of the levee* which it was organized to construct. The

averments of the bill are pointed and direct to the effect that the old levee was incorporated into and forms a part of the new one built by defendant. The demurrer admits the fact so alleged to be true, and it is obvious therefrom that the new corporation received the benefits of Wilson's labor in constructing the levee for the prior company. In such circumstances the obligation to compensate for the benefits thus received is cast upon defendant even though the original corporation. was one *de facto* only. Both the prior drainage district and the present defendant were municipal corporations under our law as is well settled by the Supreme Court decisions. [Wilson v. Drainage Dist., 237 Mo. 39; Winkleman v. Levee Dist., 171 Mo. App. 49; Morrison v. Morey, 146 Mo. 543, 560, 561.] It is certainly the established rule of decision that municipal corporations do not extinguish their debts by merely changing their names or reorganizing under new charters, and especially is this true in those cases where a new corporation succeeds an old one to conserve the same purposes for the same inhabitants and pertaining to the same territory through utilizing franchises to the same end as its predecessor. [Hill v. City of Kahoka, 35 Fed. 32.] Touching this question Judge Dillon says, in his splendid work on Municipal Corporations (4 Ed.), sec. 170 (see also 5th Edition, sec. 336) : 'An absolute repeal of a municipal charter is therefore effectual so far as it abolishes the old corporate organization; but where the same or substantially the same inhabitants are erected into a new corporation, whether with extended or restricted territorial limits, such new corporation is treated in law as the successor of the old, entitled to its property rights and subject to its liabilities.' [See also Secs. 171, 172, 173, Dillon, Municipal Corporations (4 Ed.) or Secs. 337, 338, 339 (5 Ed.) and numerous cases in notes.] On the same question the Supreme Court of the United States says, in Broughton v. Pensacola,

93 U. S. 266, 270: 'When, therefore, a new form is given to an old municipal corporation, or such a corporation is reorganized under a new charter, taking in its new organization the place of the old one, embracing substantially the same corporators and the same territory, it will be presumed that the Legislature intended a continued existence of the same corporation, although different powers are possessed under the new charter, and different officers administer its affairs; and in the absence of express provision for their payment otherwise, it will also be presumed in such cases that the Legislature intended that the liabilities as well as the rights of property of the corporation in its old form should accompany the corporation in its reorganization.' [Mobile v. Watson, 116 U. S. 289; Dillon, Municipal Corporations, supra; Amy & Co. v. Selma, 77 Ala. 103. For the general principle, see also Thompson v. Abbott, 61 Mo. 176; Hughes v. School Dist., 72 Mo. 643.] The facts set forth in the bill sufficiently reveal that the present defendant is merely a continuation of the former corporation, as we understand the rule with respect to such matters. There can be no doubt that both corporations were created under the statute for the purpose of building levees and ditches to conserve the land and the interests of the inhabitants interested in the territory defined. Indeed, the bill expressly sets forth that the new corporation, the present defendant, appropriated the twelve miles of levee theretofore built under the auspices of the former *de facto* corporation into the levee which it was organized to build. Furthermore, that the commissioners serving the present defendant reported that such levee was then standing and the corporation adopted their report and run an assessment upon the lands to compensate for such old levee so appropriated as a parcel of the new one then about to be built. After such assessment was so run upon the lands, the bill avers it was in part remitted and credited to the land

owners themselves. Thus they were relieved from the payment therefor though the benefits were expressly accepted by the inhabitants of the district. This being true, it would seem that the plaintiff's equities are abundant and that the cause loudly calls for the consideration of a court of equity. It is obvious where it appears as here the inhabitants owning land in the district included within the present incorporation have received all of the benefits of Wilson's labor that they should compensate therefor rather than permit him to lose the reasonable value of his performance. It is to be observed the suit does not proceed on the warrants set forth in the bill but rather declares on the implied promise to compensate the reasonable value of the benefits received. This course is obviously a proper one, for, though the warrants are invalid, the obligation to compensate for the work still subsists. [Louisiana v. Wood, 102 U. S. 294.]

"Moreover though the prior drainage district were not a corporation either *de jure* or *de facto*, it would seem that defendant should pay for the benefits thus received which inured to the lands and inhabitants its charter was issued to conserve. No one can doubt that defendant as an incorporated drainage and levee district under our statute possesses the power to construct a levee and it would seem that if it utilized a portion of an old one in the construction of the new that such would be moving along the lines of the very power conferred.

"The statutes constituting the charter of defendant and affording it power to act in that behalf are comprehensive, indeed, with respect to the matter of conferring powers in and about the performance of the duties which the charter casts upon it. Moreover, the Legislature has seen fit to incorporate as one of the sections of the statute concerning such levee districts the positive command to liberally construe the charter provisions in aid of the end sought to be

attained by the corporation. The statute referred to is as follows:

." 'The provisions of this article shall be liberally construed to promote the drainage and reclamation of wet and overflowed lands within this State, the building of necessary embankments or levees, and the preservation of any system of drainage heretofore constructed under any law of this State.' [Sec. 5573, R. S. 1909.]

"Furthermore, our Supreme Court has but recently declared that 'Laws relating to drainage and protection of overflow land should not receive the same narrow and restricted construction that courts give to laws governing the assessment and collection of the revenue.' [State ex rel. McWilliams v. Bates, 235 Mo. 262, syl. 14.] When the charter powers of defendant are thus considered with a liberal view to effectuate the end designed, it appears to be clear enough that defendant acted within the power conferred upon it when it incorporated the twelve miles of levee theretofore constructed under the auspices of its predecessor into the new levee constructed by it. Therefore, though it be true that the mere matters of detail pertaining to employing the old levee were not complied with in every respect, defendant is estopped from denying the validity of plaintiff's claim if it acted within the power conferred upon it in incorporating the old levee into the new. While an estoppel may not be invoked against a municipal corporation, which acts entirely beyond the scope of the power conferred upon it, this doctrine does not obtain as to such matters as fall within the powers conferred. Where a municipal corporation enters into a contract or becomes obligated to another by operation of law within the powers conferred upon it thereabout, the doctrine of estoppel obtains against it with the same force and effect as against individuals. The point has been expressly

257 Mo. 19

decided by the Supreme Court in numerous cases, but for the present see Union Depot Co. v. St. Louis, 76 Mo. 393; see also s. c. 8 Mo. App. 412; Edwards v. City of Kirkwood, 147 Mo. App. 599. For an application of the same doctrine in the case of a county which had contracted within its power but had defectively executed the power conferred, see Simpson v. Stoddard County, 173 Mo. 421, 463, 464, 465, 466. For a general review of the doctrine touching private corporations, see Bank v. Lyons, 220 Mo. 538. It seems entirely clear that defendant having acted within its power in using the old levee and incorporating it into a new one, is estopped from denying reasonable compensation for the value of the services rendered by those constructing it and who have not been compensated.

"From a careful reading of the bill, we find no facts averred therein to the effect that a portion of the account for services in constructing the levee other and distinct from that declared upon here is outstanding in the hands of other parties. There is nothing in the bill that we have been able to discover which reveals a splitting of demands or that the plaintiff here sues for only a portion of the amount due for building the levee. Though it be true that the warrants here described in the bill and others were issued, it may be true as well, for aught that appears, that all of the indebtedness has been paid save that now sued for. This being true, of course, the question of splitting of demands is not in the case.

"Neither do we see anything in the bill to the effect that Wilson performed all of the labor in building the levee while the appeal in the case of King's Lake Drainage Dist. v. Jamison, 176 Mo. 557, was pending in the Supreme Court and therefore precluded his right in equity. Indeed, it appears the warrants described in the bill were issued at different times from 1896 until the 16th day of October, 1902, but the case was not decided in the Supreme Court until July

2, 1903. It may be, for aught that appears in the bill, that the work was all performed before the appeal was perfected. But we regard this as wholly immaterial in any view of the case, for Wilson was not a party to the suit, but on the contrary was a third party under contract with the corporate entity, which appeared on the face of the judgment of the county court creating it, to be a valid and subsisting corporation possessing full authority to employ him to construct the levee. Obviously the prior drainage district with which he contracted was a corporation *de facto* at the time and he was authorized to deal with it as such. [Hill v. Kahoka, 35 Fed. 32.] By continuing to execute the contract to which he had become obligated before the appeal was perfected, he forfeited no rights and certainly should not be condemned as without equity. Other points made are overruled.''

From the foregoing it follows that the judgment of the circuit court should be reversed and the cause remanded to be proceeded with in accordance with this opinion. Let the judgment be reversed and the cause remanded.