HENRY VOSS, SR., Appellant, v. DES MOINES & MISSISSIPPI LEVEE DISTRICT NO. 1, Respondent.

St Louis Court of Appeals, July 5 and 21, 1916.

1. **DRAINS AND LEVEES: Appropriation of Existing Levee: Compensation: Statutory Construction.** Although Sec. 5707, R. S. 1909, providing that if any portion of an existing levee shall be used for the purposes of a levee district in which it is situated, compensation shall be paid to the owners, or other persons having an interest in the same by virtue of having contributed money, material or labor in the construction of the same, is to be interpreted liberally, nevertheless the intent of the Legislature with respect to the subject-matter should control.

2. ——: ——: ——. Sec. 5707, R. S. 1909, seems to authorize payment to be made by a levee district, which uses any portion of an existing levee, only to persons who own the levee taken over, or who have an interest in the same by virtue of having contributed money, material or labor in the construction of the same.

3. ——: ——: ——. Landowners who, for the protection of their land, voluntarily furnished additional right of way for, and reconstructed a portion of, the levee of a levee company, which was a dormant corporation, were not entitled to recover, under Sec. 5707, R. S. 1909, from a new levee company which appropriated the old levee together with the additional right of way and reconstruction work, for the reason that such persons were not owners of the levee which was repaired, nor were they interested in the same, within the meaning of the statute, by virtue of having contributed money, material or labor in the construction of same, since they were volunteers in the matter and did not proceed under the authority or upon the invitation of the old company.

    *Held*, by ALLEN, J., dissenting, that the record discloses that the newly constructed work performed by plaintiff landowners was entirely off of the right of way of the old levee company and merely connected with the old levee, and hence plaintiffs had such an interest in the reconstruction work, "by virtue of their having contributed money, material and labor" thereto and by reason of their title to the additional right of way secured by them being utilized by the new company, as to bring them within the contemplation of section 5707, entitling them to be reimbursed to the extent of the benefits conferred upon the new levee company.

4. **CONTRACTS: Express and Implied.** Contracts are either to be found from facts, or implied in law when one renders benefits to another which are accepted and utilized.

5. **CORPORATIONS: Implied Contracts: Non-active Corporation.** A non-active corporation having no officers is a dormant corporation and is incapable of either accepting or rejecting a benefit, and hence cannot be held liable upon an implied promise to pay the reasonable value of work performed in its behalf and for its benefit by a mere volunteer.

ALLEN, J., dissents.

Appeal from Clark Circuit Court.—*Hon. N. M. Pettin-gill*, Judge.

AFFIRMED. CERTIFIED TO SUPREME COURT.

*William L. Berkheimer, and John M. Dawson* for appellant.

(1) When the commissioners returned their report to the board of supervisors, under Sec. 8365, R. S. 1899, without making the allowance herein sued for, the plaintiff was not at fault; that is to say, he was not a party to that act. Wilson v. King's Lake District, 176 Mo. App. 470. (2) Plaintiff had no cause of action against the commissioners for refusing to make his allowance, nor the supervisors for not doing their duty. The board of supervisors having accepted the commissioners report without their having allowed plaintiff and his assignors the common counts sued on, plaintiff was driven to this cause of action against the defendant. Winkelman v. Des Moines and Mississippi Levee District No. 1, 171, Mo. App. 49;; Parsons v. Des Moines and Mississippi Levee District No. 1, 178 S. W. 280; Wilson v. Drainage District, 176 Mo. App. 470; Wilson v. Drainage District, 257 Mo. 266. (3) The rights of plaintiff are bottomed upon the implied promise of defendant to pay him the money contributed, which in equity and good conscience it has received for its use. Cary v. Curtis, 111 How. (U. S.) 246; 15 Am. & Eng. Ency. of Law (2 Ed.), 283; Henderson v. Koenig, 192 Mo. 709; 1 Dil-

lon, Munc. Corp., sec. 459, p. 533; Winningham v. Faucher, 52 Mo. App. 458; 2 Ency. Pld. & Pr., 1016-1017; Argentini v. City of San Francisco, 16 Cal. 255. (4) Defendant corporation, like private corporations, may be liable upon implied contracts. The principle upon which this doctrine rests implies if a municipality obtain the money or the property of another by mistake, or without authority of law, it is its duty to make restitution or compensation, not from any contract entered into by it on the subject, but from the general obligation to do justice, which binds all persons, whether natural or artificial. 15 Am. & Eng. Ency. of Law (2 Ed.), pp. 1083-1086; Moore v. Mayor, 29 Am. Rep. 134; Henderson v. Koenig, supra; 1 Dillon on Munc. Corp., sec. 459; Leichester v. Armstrong, 56 Mo. 298; Louisiana v. Wood, 102 U. S. 299; Memphis Gas Co. v. The City of Memphis, 30 S. W. 25; State ex rel. v. Bates, 235 Mo. 284-285.

*Bert L. Gridley* and *C. T. Llewellyn* for respondent.

(1) After the acceptance and compliance with the terms of a subscription there can be no revocation, and subscribers cannot recover back such subscription. Academy v. Cowles, 17 Am. Dec. 387; Barnes v. Perine, 9 Barb. (N. Y.) 202; Hopkins v. Upshur, 70 Am. Dec. 375; Gulf, etc., R. Co. v. Nelly, 64 Tex. 344; La Fayette County Monument Corp. v. Ryland, 80 Wis. 29; Superior Consol. Land Co. v. Bickford, 93 Wis. 220; Hodges v. O'Brien, 113 Wis. 97; Price v. St. Louis Life Ins. Co., 3 Mo. App. 262; Duval v. Laclede County, 21 Mo. 396; Handlin v. Morgan County, 57 Mo. 114. (2) The law never implies a promise, where the evidence shows the parties intended none. Aull Savings Bank v. Aull, 80 Mo. 199; Bittrick v. Gilmore, 53 Mo. App. 53; Inhabitants of Schell City v. Rumsey Mfg. Co., 39 Mo. 264; Buchanan v. Sahlein, 9 Mo. App. 552. (3) One who voluntarily pays money with full knowledge of all the facts and in the absence of fraud and duress cannot recover it back. Cloffin v. McDonough, 33 Mo. 412; Union Sav-

ings Assn. v. Kenlor, 7 Mo. App. 249; Campbell v. Clark, 44 Mo. App. 249; Atwell v. Jenkins, 28 L. R. A. 694; Croft v. South Boston R. Co., 5 L. R. A. 641. (4) It is only when parties do not expressly agree, that the law interposes and raises a promise. Sullivan v. Railroad, 64 L. R. A. 673. (5) In the case at bar it was nobody's duty to repair the breaks in the levee, nobody's duty to subscribe, no obligation existed. The subscribing was purely voluntary. Subscribers did not perform the duty of another by subscribing, it was not the performance of an obligation at all, hence the rule or principle of *quasi* contract does not apply. Davis v. Town of Seymour, 13 L. R. A. 210, 59 Conn. 531; Atwell v. Jenkins, 28 L. R. A. 694; Shepherd v. Young, 69 Am. Dec. 242; Montgomery County Board of Coms. v. Ristine, 8 L. R. A. 461.

NORTONI, J.—This is a suit in *assumpsit* for the reasonable value of a portion of levee constructed by plaintiff and his assignors. The finding and judgment were for defendant and plaintiff prosecutes the appeal.

It appears the Egyptian Levee Company, incorporated under a special act of the Legislature of 1855, constructed and maintained a system of levees in Clark county, Missouri, to protect certain lands from the overflow of the Des Moines, Fox, and Mississippi rivers. About 11,500 acres of land were included in the district, and the levees were maintained for many years, but finally the corporation became dormant. In other words, the corporate officers a number of years ago refused to qualify and act after election, and the Egyptian Levee Company remained thereafter an inactive corporation. The company owned the rights of way for its levee, and a number of ditches, and also a number of levees. Finally, a considerable portion of the levee was washed away, and at that time the corporation was without officers or anybody to represent it. Plaintiff and a number of others owning land within the levee district went voluntarily about the repair of the broken levee, in order to protect their crops.

It appears they called upon the landowners to contribute their proportionate part, and this they did. The parties had a meeting, which about sixty landowners in the district attended, and it was agreed each should pay his portion toward rebuilding the levee, which had been theretofore washed away, and present their claims to a new levee corporation to be subsequently formed in respect to the same territory. Plaintiff and his assignors contributed the several amounts sued for here and rebuilt the levee of the old, defunct Egyptian Levee Company. To this end, they purchased a parcel of right of way and constructed a portion of the levee on this, in filling in a considerable gap, but connected the new levee with the old. Also a portion was constructed on the land of plaintiff Voss, but all was built into and connected up with the levees of the old company. About a year thereafter, defendant, Des Moines & Mississippi Levee District No. 1, was incorporated under the general statutes of Missouri—that is, article VII, chapter 122, Revised Statutes 1899 (now Art IX, Chap. 41, R. S. 1909, as amended and re-enacted).

Section 8365, Revised Statutes 1899, same section 5707, Revised Statutes 1909, under which defendant was organized, provides, among other things, as follows:

"If the commissioners shall find that any levees or other works have been constructed, which can be used in making the levees and improvements herein contemplated, they shall assess the value of the same and report the same to the board of supervisors, and said supervisors may order said levee or such works be used so far as they extend, for the purposes of the levee district in which they are situated, and that the owners of such levee, or other improvements, or other persons having an interest in the same by virtue of having contributed money, material or labor in the construction of the same, be paid, in proportion to their interest, a reasonable compensation therefor, which shall in no event exceed the assessed value thereof."

Although the matter of the several contributions herein sued for was brought to the attention of the

board of commissioners appointed to assess the benefits in connection with the organization of defendant, this board declined to allow plaintiff and his assignors, as if they were either the owner or interested parties, compensation for the expenditure by them in acquiring other right of way and in improving the old levee of the Egyptian Levee Company. The board of commissioners nevertheless adopted the levee of the old company, together with the portions repaired by plaintiff and his assignors, and the whole was utilized by defendant—that is, the new corporation—in protecting the district.

Plaintiff sues defendant, the new corporation, in the view that it should respond to him and his assignors for the reasonable value of the benefits conferred in furnishing the additional right of way and in reconstructing the levee of the old company, and relies in part upon the principle reflected in Winkelman v. Des Moines & Mississippi Levee Dist. No. 1, 171 Mo. App. 49, 153 S. W. 539; also Wilson v. King's Lake Drainage & Levee Dist., 176 Mo. App. 470, 158 S. W. 931; s. c. 257 Mo. 266, 165 S. W. 734. But those cases are distinguishable from this, in that there a valid claim existed against the old or prior company, contracted by the prior company, in the one case the then existing corporation—that is, the Egyptian Levee Company—which claim had been reduced to judgment, and in the other, against the prior existing *de facto* corporation for services performed under a contract with the officers of such corporation, whereas here, the money was contributed by plaintiff and his assignors in voluntarily furnishing right of way and rebuilding the levee of the defunct Egyptian Levee Company without any contract whatever with that company or its officers, for, indeed, it had no officers at the time and existed only as a lifeless corporate being.

By instructions requested, which the court refused, it appears plaintiff insists that the statute above copied (section 8365, R. S. 1899, same statute section 5707, R. S. 1909) laid an obligation upon the commissioners to allow reasonable compensation to him and his assignors, as

individuals, for the value of the right of way furnished and the levee constructed in rebuilding the breaks in the old levee of the prior company, even though such money was expended without any arrangement whatever with the officers of that company and after it had ceased to be an active going concern. In this connection, it is argued that the commissioners failed in their duty in rejecting the claims thus presented and thus entailed an obligation against the new corporation—that is, the defendant company—to make compensation for the reasonable value of the right of way and of the levee constructed in the circumstances above stated, for that the new company appropriated the benefits to its own use.

We are not inclined to declare the just principle reflected in the statute quoted to comprehend the facts in judgment here. The statute provides that the commissioners may treat with the value of old levees and on their report the new company may utilize them in building the new and ''that the owners of such levee or other improvements, or other persons having an interest in the same by virtue of having contributed money, material or labor in the construction of the same, be paid in proportion to their interest a reasonable compensation therefor, which shall in no event exceed the assessed value thereof.'' Although this statute is to be interpreted liberally, nevertheless the intent of the Legislature in respect of the subject-matter should control. The statute seems to authorize the payment by the new levee district to be made only to persons owning the levee taken over or having an interest in the same by virtue of ''having contributed money, material, or labor in the construction, etc.'' The important words of the statute for consideration here are ''the owners of such levee . . . or other persons having an interest in the same.''

No doubt the statute intends to include the case of the owner of a private levee on his individual property which may be taken over in the organization of a levee district, and no doubt it includes as well the case

of an old levee district owning levees which are taken over in the construction of a new and, it may be, enlarged system. It would seem, too, that, from the words ''having an interest in the same by virtue of having contributed money, material, or labor in the construction, etc.,'' the Legislature intended to provide a remedy for those who may expend money or furnish material or labor in the construction of a levee under contract with the authorities representing the levee company, as is frequently done in cases where the organization of the levee district so served and benefited is subsequently overturned in the courts through defects in its organization, as in the case of King's Lake Drainage & Levee Dist. v. Jamison, 176 Mo. 557, 75 S. W. 679. But obviously the plaintiff and his assignors are not within the terms of this statute, for in the first place they did not own any portion of the levee constructed by them, but rather merely repaired the old levee owned by the old corporation and in this connection contributed a portion of the right of way for their own benefit.

If plaintiff and his assignors owned the levee so repaired and the right of way thus contributed as their private property and defendant appropriated it to its own use, this feature of the case would no doubt invoke the aid of the statute above copied. But it would seem the act of voluntarily going in upon the property of the old company and reconstructing the broken levee and voluntarily providing a right of way on which to build it, connecting the whole with the levees of the old company, invokes the principle which attends the case of one who voluntarily commingles his goods with those of another, which cannot thereafter be segregated, and as a result forfeits his right in the premises. In this view it appears that plaintiff and his assignors were not the ''owners'' of the levee on which they had conferred benefits, for the owner continued to be the old Egyptian Company and they stood as voluntary contributors to the old company in the repair so as to preserve it intact for their mutual benefit.

Neither are they persons "having an interest" in the levees of the old company as by contributing money, material or labor in the construction, for that they volunteered in the matter and did not proceed by the authority or on the invitation of that company. At most, these parties went about voluntarily repairing the old levee owned by the old company and, in carrying out their self-conceived plans, purchased some additional right of way, and plaintiff Voss furnished other right of way with a view to constructing the levee where they thought it should stand. The deed to this right of way so purchased was taken in the name of a committee. No conveyance to the new company appears and neither is there a conveyance shown from Voss to defendant. However this may be, the parcel of right of way purchased and that occupied on Voss' land, together with the reconstructed fill in the levee, were voluntarily built into the old levee of the old company of the free volition of plaintiff and his assignors solely—that is, they voluntarily commingled such right of way and the repairs with the property of the old company. Obviously these parties had no interest in the old levees on account of the money expended voluntarily for the prior, or old, Egyptian Levee Company, and this being true, none which may be regarded as enforceable against the new corporation.

It is true plaintiff and his assignors were interested parties, in that they owned land within the district, and it is said upon the breaking of the old levee because of the flood their lands were inundated and crops were being overflowed. Because of these facts, the parties had a meeting and contributed the amounts involved to reconstruct the old levee, which they did, and in this connection purchased the parcel of new right of way. But in any view of the case this must be regarded as a voluntary act, when viewed from the standpoint of the law, for the Egyptian Levee Company, as such, was in no wise obligated in the matter whatever. At that time, the Egyptian Levee Company

was inactive as a corporation, for that its officers had refused to qualify and act in its behalf some time before. It is said its franchises had been forfeited through nonuser, and because of this the defendant, or new company, was subsequently organized to construct and maintain levees for the protection of the same territory, the same inhabitants, and gathered together new franchises with a view to serve the same ends which the prior company had abandoned. Obviously the statute created no contract rights between plaintiff and his assignors and the old defunct Egyptian Levee Company, for contracts are either to be found from facts, or implied in law when one renders benefits to another which are accepted and utilized. The old Egyptian Levee Company was a dormant concern and incapable of either accepting or rejecting the benefits said to have been conferred. Such being true, no interest accrued against it in favor of plaintiff and his assignors, enforceable at law, and, therefore, it appears to be a voluntary performance.

It is believed that, to give the statute the broad construction insisted upon by plaintiff, would impinge a just principle which makes for security against the onslaught of invalid claims, when the integrity of the principle should be protected and held immune as well in the case of a levee company as in that of other concerns or individuals. Although it be true that, if one performs valuable services and so renders benefits to another which the other retains and utilizes, the law raises up and implies a promise to pay the reasonable value, the principle would seem to be without application here, for that the services were rendered voluntarily, without request, to the old company, when it was incapable of accepting or rejecting the benefits. Indeed, to declare an existing obligation in such circumstances to compensate on such an *ex parte* voluntary conferring of benefits would be the equivalent of declaring that a property owner who sojourned for a season abroad would find himself, on return, under a legal obligation to compensate a stranger who had vol-

untarily gone about the task of building a new porch on his house during his absence, without consulting either his wishes or convenience in the matter, and this because he used the porch so erected. It would seem this suit seeks to extend the just principle relied upon beyond the confines of security for the rights of others, which should always attend its application, in that injustice may not be done in some cases.

The court did not err in refusing the instruction requested, and the judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* concurs. *Allen, J.,* dissents and deems the opinion of the court to be in conflict with the judgment of the Supreme Court in Wilson v. King's Lake Drainage & Levee Dist., 257 Mo. 266, 165 S. W. 734. Because of this he requests the case be certified to the Supreme Court for final determination, and it is so ordered.

## DISSENTING OPINION.

ALLEN, J.—I concurred in the opinion written by my Brother NORTONI herein, but upon motion for rehearing and a further consideration of the matter I have concluded to withdraw such concurrence for reasons which I shall briefly indicate.

It appears that the monies laid out by plaintiff and his assignors went to make up the total sum of $4253.42 expended by certain landowners in the drainage district in question, for the purpose of making levee improvements at what is termed the "McGuire Fill" and the "Voss Dike." These are spoken of in the majority opinion as repairs to the old levee maintained by the Egyptian Levee Company, which became defunct, and they were of that general nature, but in fact it appears that at the McGuire Fill a new strip of right of way was purchased, the title being taken in a committee appointed by those contributing the funds, upon which right of way, one hundred feet wide and perhaps a quarter of a mile in length, a new piece of levee was constructed, the ends thereof being made to

connect with the old levee so as to form a continuous embankment. And in doing the work at the Voss Dike it appears that the new dike or embankment was built, not on the right of way of the Egyptian Levee Company, which was then in the bed of the river, the latter having forced its way behind the old dike, but upon land owned by plaintiff Voss, and more than one hundred feet from the river bank. The ends of the new dike thus constructed were evidently made to connect with the old dike or levee, as in the case of the McGuire Fill.

In other words, as I understand the evidence contained in the record before us, monies laid out by plaintiff and his assignors, and certain other landowners as well, were expended through a committee in constructing these two embankments, one upon a right of way purchased for that purpose and the other upon land of plaintiff Voss, the newly constructed work in each instance being entirely off of the right of way of the old levee company but made to connect with the old levee. The record discloses that $3241.48 was expended at the McGuire Fill, of which $100 was contributed by an attorney, the remainder, to-wit, $3141.48, being advanced by plaintiff and his assignors and other owners of land in the district, each contributing on the basis of $1.00 per acre of land owned; and it appears that $1111.94 was expended on the Voss Dike, one-half of which was contributed by plaintiff. The total acreage in the district is said to be approximately eleven thousand, five hundred acres. And it therefore appears that the owners of much less than one-half of the land in the district contributed to the making of these improvements. The monies were raised by subscriptions among the landowners, and plaintiff's evidence goes to show that this was done in contemplation of the organization of a new levee district which was expected to make reimbursement therefor.

In view of the fact that the work done at the McGuire Fill was on a new piece of right of way purchased for that purpose, and that at the Voss Dike

upon land of plaintiff Voss, and the fact that the defendant, the new drainage district subsequently incorporated, took over and utilized for its purposes, for the benefit of all of the landowners of the district, both of these embankments, strengthened and enlarged them and incorporated them into its improved levee, the case appears to me to be one falling within the purview of the statute under which defendant was organized, and upon which plaintiff here in part relies, viz., section 5707, Revised Statutes 1909, quoted in the majority opinion. It appears that plaintiff and his assignors had such interest in work constructed at the McGuire Fill and at the Voss Dike, "by virtue of having contributed money, material and labor" in the construction thereof, and by reason of their title to the two pieces of right of way utilized, as to bring them within the contemplation of the statute, entitling them to be reimbursed to the extent of the benefits conferred upon the new levee district.

In the majority opinion it is said that this case is distinguishable from that of Winkelman v. Des Moines & Mississippi Levee District No. 1, 171 Mo. App. 49, 153 S. W. 539, and Wilson v. King's Lake Drainage & Levee District, 176 Mo. App. 470, 158 S. W. 931; s. c. 257 Mo. 266, 165 S. W. 734, in that in each of the cases mentioned a valid claim existed against the old or prior company, contracted by it, and which was held to continue as a liability of the new company subsequently organized. But it seems to me that the distinction made is not of controlling importance, and that this case falls within the broad principle upon which the Wilson case, supra, proceeds.

Irrespective of the statute it seems that liability should here be cast upon the defendant upon a contract implied by law to reimburse plaintiff and his assignors to the extent of the benefits received by defendant by virtue of its appropriation and use of these two distinct and separate embankments constructed off of the right of way of the old levee to which defendant succeeded.

The action is one *in assumpsit,* equitable in character, and which in general lies whenever the defendant has received money, or its equivalent, which in equity and good conscience should be repaid to plaintiff. [Henderson v. Koenig, 192 Mo. l. c. 709, 91 S. W. 88; Stout v. Hardware Co., 132 Mo. App. l: c. 529, 110 S. W. 619.] It appears that defendant, in reconstructing or improving the entire levee, did not, at the McGuire Fill or the Voss Dike, follow the course of the old levee, but took possession of the work constructed by plaintiff and other landowners at these points, though not upon defendant's right of way, incorporated them into its levee, and utilized them for the benefit of the drainage district as a whole. Such being the case, I think that the law will imply a contract to reimburse plaintiff and other contributing landowners to the extent of the benefits thus received by defendant; and plaintiff's evidence tends to show that the embankments in question were reasonably worth to defendant the amounts expended thereon.

It does not appear that the old Egyptian Levee Company had ceased to exist, though it does appear that it was lying dormant. But with this, I take it, we are not here particularly concerned. In Wilson v. Drainage District, 257 Mo. l. c. 288, it is said: "Moreover though the prior drainage district were not a corporation either *de jure* or *de facto,* it would seem that defendant should pay for the benefits thus received which inured to the lands and inhabitants its charter was issued to conserve. No one can doubt that defendant as an incorporated drainage and levee district under our statute possesses the power to contruct a levee and it would seem that if it utilized a portion of an old one in the construction of the new that such would be moving along the lines of the very power conferred." This is the language of my Brother NORTONI in the opinion of this court adopted by the Supreme Court in the Wilson case, supra. And the opinion as adopted holds that the defendant therein acted within the power conferred upon it in incorporating a certain piece of

levee into the new levee which it had constructed; and that as it was acting within the powers conferred upon it, as a municipal corporation, it was estopped to deny the validity of the plaintiff's claim for work done in constructing the portion of the levee thus appropriated. In this connection the following language is used, viz: "It seems entirely clear that defendant having acted within its power in using the old levee and incorporating it into a new one, is estopped from denying reasonable compensation for the value of the services rendered by those constructing it and who have not been compensated."

While the levee taken and appropriated in that case was one which had been constructed under contract with the old levee company, the principle asserted and upon which the case proceeds seems to apply with equal force to the facts here involved.

Were the case indeed one where plaintiff and his assignors had voluntarily made certain repairs upon the old levee of the Egyptian Levee Company, situated upon its right of way, while that company lay dormant, the case would present quite a different aspect. But the facts are, as I gather them from the record, that plaintiff and other landowners constructed two distinct embankments entirely off of the old right of way, at points where the river had broken through the old levee and encroached upon the adjoining land. Had the defendant, upon its organization, reconstructed the old levee at these points, upon the old right of way, were that found feasible, plaintiff and his assignors, who had built these embankments off of such right of way, would have had no claim for the monies thus expended. But since the defendant has seen fit to depart from its right of way and utilize for its purposes the embankments thus constructed, it may, I think, under the doctrine announced in the Wilson case, properly be held to be estopped to deny compensation to those who constructed such improvements, to the extent of the benefit which it received thereby.

It is suggested that plaintiff and his assignors contributed to the building of these improvements for their own protection, and that they now have and enjoy the benefit thereof. While it is doubtless true that the primary object was to protect their own lands, yet when the improvements thus made are incorporated into the improved levee maintained by the new levee district, and are made to serve as a protection to all of the lands therein, it would seem but just and equitable to require that the new organization make reimbursement therefor, in order that the cost of such construction may fall ratably upon all included within the district.

I therefore dissent from the result reached in the majority opinion, and as I deem the decision of my associates herein to be contrary to the decision of the Supreme Court in Wilson v. King's Lake Drainage & Levee District, 257 Mo. 266, 165 S. W. 734, I request that the cause be certified to the Supreme Court for final determination.